COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JOHN J. STOIA, JR. (141757)
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
jstoia@csgrr.com
tblood@csgrr.com
leslieh@csgrr.com

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone:  602/274-1100
602/274-1199 (fax)
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWNDEE HARTLESS, on Behalf of Herself and All Others Similarly Situated and the General Public,<br><br>      Plaintiff,<br><br> vs.<br><br>CLOROX COMPANY,<br><br>      Defendant. | Case No.  06-CV-2705 JAH(CAB)<br><br>FIRST AMENDED CLASS ACTION COMPLAINT FOR:<br><br>1. Violation of Consumers Legal Remedies Act, Civil Code §1750; and<br>2. Violation of Unfair Competition Law, Business and Professions Code §17200<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff ShawnDee Hartless, by and through her attorneys, brings this action on behalf of herself and all others similarly situated against defendant Clorox Company ("Clorox"). Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## NATURE OF THE ACTION

1. Clorox sells Clorox Automatic Toilet Bowl Cleaner with Bleach (the "Product") in California and throughout the United States. It represents and warrants on each and every Product package that the Product will not harm plumbing. This statement is not true.

2. In reality, the Product contains highly corrosive chemicals that, upon contact, attack plastic, rubber and metal toilet tank components causing them to disintegrate, warp, swell and blister, materially shortening the life span of these parts. Among other damage, the Product causes seals to fail, resulting in water leaking from the toilet tank and forcing consumers to replace these components long before they would otherwise need replacing.

3. Clorox is well aware of the damage caused by the Product, yet nonetheless makes this false representation in order to maintain and increase sales. California consumer protection laws, as well as the consumer protection laws of the other states, prohibit this conduct.

## JURISDICTION AND VENUE

4. Original jurisdiction in this Court is proper pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs are citizens of a state different from Clorox. Further, greater than two-thirds of the plaintiff Class reside in states other than the state in which Clorox is a citizen.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to the counts asserted here occurred in this district and because defendant:

    (a)    is headquartered in California;

(b)     is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its Product in this district; and

(c)     does substantial business in this district.

**PARTIES**

6.     Plaintiff ShawnDee Hartless resides in this district. During the Class period, plaintiff purchased and used the Product, suffered injury in fact and lost money and property as a result of the unfair competition described herein.

7.     Defendant Clorox is incorporated in Delaware. Its company headquarters is located in Oakland, California. Clorox is registered to do business in the State of California, and is doing business in the State of California. Clorox sells the Product to consumers throughout the United States, including tens of thousands of consumers in California.

**DEFENDANT'S UNLAWFUL CONDUCT**

8.     The Product is designed to be placed in the toilet tank and to slowly release chemicals into the water held in the tank. The Product contains significant amounts of chlorine and bromine.[1] These chemicals are highly corrosive. Because the chemicals are released into the tank water, these corrosive chemicals are in continuous contact with the plastic, rubber and metal toilet tank components in significant concentrations to damage these plumbing components. As a result, the chemicals cause these components to disintegrate, warp, swell and blister.

9.     Other products used to clean and disinfect toilet bowls, including products made, marketed and sold by Clorox, have different chemical compositions that do not harm the tank components. Also, other products hang in the toilet bowl, and are not placed in the tank, so that the corrosive chemicals only come into contact with the porcelain bowl, and not any parts that can be damaged.

---

[1]     Since 1999, the composition of the Product has been as follows: 51% 1-bromo-3-chloro-5,5-dimethylhydantoin; 23.3% 1,3-dichloro-5,5-dimethylhydantoin; 9% 1,3-dichloro-5-ethyl-5-methlyhydantoin; 15% boric acid; and 1.7% volatiles and insolubles.

- 2 -

10. As the manufacturer of the Product, Clorox possesses specialized knowledge regarding the content and effect of the chemicals contained in the Product and is in a superior position to know of and learn of the effects and has known and learned of the damaging effects its Product will have on its customers' tank components.

11. For example, Clorox conducted its own independent testing of its Product which, based on information and belief, indicated that its Product was highly corrosive in nature and caused damage to toilet tank components.

12. In addition, independent long-term exposure tests have demonstrated that the Product materially damages toilet valves, destroys toilet flappers and corrodes the metal and other exposed plastic parts in the toilet tank. Clorox has been aware of these tests and their results from the time the tests were conducted because it took part in these tests.

13. For example, in-depth testing over a 5-year period by the California Metropolitan Water District ("MWD") revealed that the Clorox Product severely damaged the in-tank flush valve closure mechanism (aka, the "toilet flapper") that controls the flow of water from the tank into the bowl and prevents leakage, materially reducing the effectiveness of the MWD's water conservation efforts, including the promotion and funding of ultra-low-flush toilets. In a series of reports, the MWD describes the tests it conducted on chlorinated in-tank toilet tablet products, including the Clorox Product, as part of its ultra-low-flush toilet water conservation program. *See* Ex. 1 (1996 MWD Test Report) at p. 3; Ex. 2 (1998 MWD Test Report) at p. i, 4; Ex. 3 (2000 MWD Test Report) at Introduction, p. 3 and Study Background, p. 3, attached hereto.

14. Clorox knew about and participated in the MWD's tests at the time the tests were performed. In fact, Clorox provided the samples of its Product used in the tests. *See* Ex. 2, at p. I and 4; Ex. 3, at Introduction, p. 3.

15. Clorox also helped formulate and consulted on the proper testing protocol. *See* Ex. 1, at p. 3; Ex. 2, at p. I and 4; Ex. 3, at Study Background, p. 3.

16. In its 1996 Report, the MWD reported that the Clorox Product caused leakage to occur in less than one month of exposure. *See* Ex. 1 at p. 8 and Attachment D thereto.

17. Two years later, in its 1998 Report, the MWD reported that the Clorox Product affected all of the flappers tested and caused several of them to leak after only 30 days of exposure. *See* Ex. 2 at p. 9, 12 and Tables 9 and 10 thereto. The MWD test results were distributed throughout the industry, including to Clorox in 1998.

18. Because the chlorinated in-tank toilet tablet manufacturers, including Clorox, continued to sell the tablets in their demonstrated harmful formulations, the engineering profession and conservationists attempted action. In 2001, a team from the American Society of Mechanical Engineers ("ASME") and the American National Standards Institute ("ANSI") was formed to "work[ ] with the toilet industry and automatic toilet tank cleaner suppliers to develop a test that would both set a standard durability test for tank trim and that would set limits on the chemicals used in automatic toilet tank cleaners." *See* Ex. 4, at p. iv, excerpt of ASME A112.19.5 Standards. Clorox was part of the team. *See* Ex. 5, Chemicals/Material Durability – Sub Task Group Roster. The committee was unsuccessful based primarily on Clorox's and other tablet manufacturers' refusal to cooperate and meet the goals of the committee.

19. Even though Clorox was fully aware of the damage caused by its Product, and actively worked to successfully quash efforts to address the problem, Clorox falsely represented in its advertisements and Product packages that its Product was safe and "does not harm plumbing," which Clorox knew or should have known was not true. This representation was made by Clorox to all purchasers of the Product as described below, before and during the Class period.

20. Clorox could have and should have ceased selling this Product and instead offered for sale alternative formulations that do not have these destructive side-effects. Clorox could have readily modified the Product's design to protect against toilet damage, but chose not to do so.

21. Further, despite its knowledge of the damage caused by the Product, Clorox sold, and continues to sell, a defective product to consumers, voluntarily promising and expressly warranting to purchasers that the Product would not harm their toilets. Specifically, Clorox uniformly represents that the Product "does not harm" the plumbing. This representation is an advertisement. This representation was and is made in writing on each and every box of the Product sold to plaintiff and the other members of the Class throughout the Class period. Every Clorox Product sold to

1  plaintiff and Class members during the Class period came packaged in a box containing the "does
2  not harm plumbing or septic tanks" written representation, as follows:



7  *See* Ex. 6, attached hereto.  Defendant included this safety assurance language to bolster Product
8  sales and to reassure customers that although the Product is strong, it will not cause harm to
9  plumbing.  This type of advertising message is often known as a "reassurance message" because it
10 reassures consumers that a good or service will not cause a particular problem or have an undesirable
11 side effect that, if consumers believed the good or service had, would cause consumers to not
12 purchase it.

13       22.     Defendant continued to market its Product in packages containing this uniform
14 material safety assurance language even though it knew its Product was not safe to toilet components
15 but rather was highly corrosive and did, in fact, harm plumbing.

16       23.     Defendant continued to manufacture and sell its Product even after it became aware
17 or should have been aware that laboratory tests demonstrated that its Product, when used as directed,
18 damaged the toilet tank components.  Defendant knew or should have known about the falsity of the
19 representation no later than 1996, when the first of the MWD test results were provided to defendant.

20       24.     Defendant has not disclosed to plaintiff and Class Members, on its Product packages
21 or otherwise, the corrosive nature of its Product.  Other products that are equally effective, but do not
22 harm plumbing and have been widely available at the same cost throughout the Class period.

23       25.     By not disclosing the corrosive nature of the Product and falsely representing the
24 Product as safe for toilet components, defendant intended to defraud plaintiff and Class members,
25 inducing them to purchase the Product.

26       26.     Plaintiff and Class members had a reasonable expectation as consumers that the
27 Product would not ruin the parts in their toilet tank and reasonably relied on defendant's
28 representations on the Product package and in its advertisements that the Product "does not harm"

- 5 -

1 the toilet tank components.  Had they known the true facts, they would not have bought the Product.
2 As a result, plaintiff and the Class have incurred damages, including the price they paid to purchase
3 the defective Product.

4     27. At the same time, by falsely representing that its Product was safe, Clorox sold the
5 Product and defendant has wrongfully profited.

6 **ALLEGATIONS CONCERNING THE PLAINTIFF**

7     28. Plaintiff purchased several packages of the Product from various stores in San Diego
8 beginning in November of 2004, and paid the retail price of approximately $4.00 for each package.
9 Each time the Product was purchased, it came in materially the same packaging depicted in Ex. 6.

10     29. The Product plaintiff purchased was packaged in a box that represented the Product
11 would "not harm" her plumbing, just as depicted in Ex. 6.

12     30. Plaintiff read the package and reasonably believed that representation to be true.

13     31. Plaintiff purchased and used the Product believing it was reasonably safe as
14 represented on the Product package for the purpose of cleaning and disinfecting her toilet bowl.
15 Plaintiff did not expect the Product to damage the toilet tank components.

16     32. After using the Product for several months, plaintiff noticed that her toilet was
17 continually running because the rubber flapper inside her toilet had warped and deteriorated.  The
18 flapper no longer functioned properly and would not form an adequate seal.  Prior to using the
19 Product, plaintiff experienced no problems with her flapper.  Plaintiff had to replace the damaged
20 flapper with a new one.  She purchased a new flapper and personally installed it in her toilet.

21     33. Plaintiff quit using the Product after she replaced her flapper and has experienced no
22 problems with, or damage to, her toilet since ceasing to use the Product.

23     34. Plaintiff has suffered injury in fact and lost money and property as a result of the
24 alleged conduct.  She lost money as a result of the alleged conduct because she paid for the Product
25 and paid to purchase a new flapper.  Further, she lost property when the original flapper deteriorated
26 as a result of the Product.  She has also suffered damaged in the amount she paid for the Product.

35. Had plaintiff known the Product would cause her flapper, flush valve and other rubber, metal and plastic toilet components to warp, swell, blister and crack, she would not have purchased or used the Product.

## CLASS ALLEGATIONS

36. Plaintiff brings this action on behalf of herself and all those similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b). The Class of persons whom plaintiff seeks to represent is defined as:

> All persons in the United States who, within the applicable statute of limitations, purchased Clorox Automatic Toilet Bowl Cleaner With Bleach (the "Class" or "Class members").
>
> Excluded from the Class are the defendant, any parent, subsidiary or affiliate of the defendant, any entity in which the defendant has a controlling interest, and the respective officers, directors, employees, agents, legal representatives, heirs, predecessors, successors, and assigns of such excluded persons or entities.

37. Plaintiff and the members of the Class are so numerous that joinder of all members individually, in one action or otherwise, is impracticable.

38. There are questions of law and fact common to the Class.

39. Plaintiff's claims are typical of the claims of the members of the Class. The named plaintiff is a member of the Class of victims described herein.

40. The named plaintiff is willing and prepared to serve the Court and the proposed Class in a representative capacity with all of the obligations and duties material thereto. Plaintiff will fairly and adequately protect the interests of the Class and has no interests adverse to or which directly and irrevocably conflict with the interests of other members of the Class.

41. The self interests of the named Class representative are co-extensive with, and not antagonistic to, those of the absent Class members. The proposed representative will undertake to represent and protect the interests of the absent Class members.

42. The named plaintiff has engaged the services of counsel indicated below. Counsel are experienced in complex class action litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise will represent the named Class representative and absent Class members.

43. This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

44. This action involves questions of law and fact common to plaintiff and all members of the Class. These common questions predominate over any issues affecting individual members of the Class and include:

    (a) whether defendant knew its Product damaged toilets;

    (b) whether defendant knew the subject representations it made were inaccurate, incorrect, false or misleading;

    (c) whether feasible alternative non-destructive formulations of the Product were possible;

    (d) whether defendant's Product was safe when used as directed; and

    (e) whether plaintiff and Class members have been harmed and the proper measure of relief.

45. Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than in piecemeal individual determinations.

46. There is no plain, speedy or adequate remedy other than by maintenance of this lawsuit as a class action because individual damages are relatively small, making it economically infeasible for Class members to pursue remedies individually. The prosecution of separate actions by individual members of the Class, even if theoretically possible, would create a risk of inconsistent or varying adjudications with respect to individual Class members against defendant and would establish incompatible standards of conduct for defendant.

47. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

    (a) given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that defendant committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

   (b) when defendant's liability has been adjudicated, claims of all Class members can be determined by the Court;

   (c) this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

   (d) without a class action, many Class members would continue to suffer injury, and defendant's violations of law will continue without redress while defendant continues to reap and retain the substantial proceeds of its wrongful conduct.

  48. Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

  49. Plaintiff seeks equitable and injunctive relief on behalf on the entire Class on grounds generally applicable to the entire Class.  In addition, plaintiff seeks actual and punitive damages, to the extent available.

## COUNT I

**For Violations of the Consumers Legal Remedies Act**
**Civil Code §1750** *et seq.*

  50. Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herewith.

  51. This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "Act").  Plaintiff is a consumer as defined by California Civil Code §1761(d).  Defendant's Product is goods within the meaning of the Act.

  52. Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with plaintiff and the Class which were intended to result in, and did result in, the sale of defendant's Product:

  (5) Representing that [the Product has] . . . characteristics, . . . uses [or] benefits . . . which [it] does not have.

      * * *

  (7) Representing that [the Product is] of a particular standard, quality or grade, . . . if [it is] of another.

      * * *

- 9 -

(9)    Advertising goods . . . with the intent not to sell them as advertised.

* * *

(16)    Representing that [the Product] has been supplied in accordance with a previous representation when it has not.

53.    As described above, defendant violated the Act by misrepresenting and advertising its Product was safe and "does not harm plumbing" when it knew, or should have known, that was not a true representation.

54.    Pursuant to California Civil Code §1782(d), plaintiff seeks a Court order enjoining the above-described wrongful acts and practices of defendant.

55.    In accordance with the procedure proscribed in California Civil Code §1780, plaintiff gave written notice to defendant. *See* Ex. 7, 12/13/06 Blood letter to Mayorkas.  As defendant has failed to rectify or agree to rectify the problems associated with the actions detailed above and failed to provide notice to all affected consumers of its intent to do so within 30 days of the date of written notice pursuant to §1782 of the Act, plaintiff seeks actual and punitive damages, restitution and all other relief available to her and the other members of the Class pursuant to California Civil Code §1780.

## COUNT II

### For Violation of Unfair Competition Law
### Business & Professions Code §17200 *et seq.*

56.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herewith.

57.    California Business & Professions Code §17200, *et seq.* prohibits acts of unfair competition, which means and includes any "unlawful, unfair or fraudulent business act or practice," any "unfair, deceptive, untrue or misleading advertising" and any act prohibited by Business & Profession Code §17500.

58.    Clorox violated California Business & Professions Code §17200's prohibition against engaging in an "unlawful" business act or practice, by, *inter alia*, continuing to voluntarily and expressly warrant the Product without the intent to uphold its warranty, continuing to sell the

Product after learning that the Product damaged toilet tank components, violating California Civil Code §1791.2, violating California Civil Code §1770, violating California Civil Code §§1572, 1573, 1709, 1710, 1711 and 3300, by omitting facts it had a duty to disclose and by otherwise violating the common law.

59. Clorox also violated California Business & Professions Code §17200's prohibition against engaging in an "unfair" business act or practice by, *inter alia*, systematically breaching its contracts with consumers and the general public, continuing to sell the Product after learning that the Product damaged toilet tank components, violating California Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, 1791.2 and 3300. Defendant's conduct offends public policy and is unethical, oppressive, unscrupulous and violates the laws stated.  Further, defendant's conduct caused and continues to cause substantial injury to consumers and their property.  The gravity of Clorox's alleged wrongful conduct outweighs any purported benefits attributable to such conduct.  There were also reasonably available alternatives to Clorox to further legitimate business interests.

60. The foregoing conduct also violates Business & Profession Code §17200's prohibitions against "fraudulent" business practices as described above, including, *inter alia*, continuing to sell the Product after learning that the Product damaged toilet tank components, making statements that are likely to deceive the reasonable consumer, omitting facts that are likely to deceive the reasonable consumer, making false and misleading representations, and omitting facts it had a duty to disclose.

61. Clorox also violated California Business & Professions Code §17200's prohibition against engaging in an "unfair, deceptive, untrue or misleading advertising" and/or any act prohibited by Business & Profession Code §17500 by engaging in the unfair, deceptive, untrue and misleading advertising described above, including representing that the Product does not harm plumbing when, in fact, it does.

62. Plaintiff reserves the right to allege other violations of law which constitute other "unlawful, unfair or fraudulent business act or practice," any "unfair, deceptive, untrue or misleading advertising" and any act prohibited by Business & Profession Code §17500. Such conduct is ongoing and continues to this date.

63. Clorox, thus, has engaged in acts, practices and advertising entitling plaintiff to judgment and equitable monetary relief against Clorox, in the form of the purchase price of the Product plaintiff and Class members purchased and injunctive relief, as set forth in the Prayer for Relief.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays this Court:

A. Certify this action as a plaintiff class action;

B. Award compensatory and punitive damages as to all Counts where such relief is permitted;

C. Enjoin defendant's conduct and order defendant to engage in a corrective advertising campaign;

D. Award equitable monetary relief, including restitution;

E. Award pre-judgment and post-judgment interest at the legal rate;

F. Award plaintiff and Class members the costs of this action, including reasonable attorneys' fees and expenses; and

G. Such other and further legal and equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: November 28, 2007

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JOHN J. STOIA, JR.
TIMOTHY G. BLOOD
LESLIE E. HURST


    s/  Timothy G. Blood
      TIMOTHY G. BLOOD

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone:  602/274-1100
602/274-1199 (fax)

Attorneys for Plaintiff

S:\CasesSD\Clorox TC\CPT 00047462 3d Amended.doc

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 28, 2007.

                                                s/ Timothy G. Blood
                                                TIMOTHY G. BLOOD

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:  tblood@csgrr.com

# Mailing Information for a Case 3:06-cv-02705-JAH-CAB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Timothy Gordon Blood**
  timb@csgrr.com,ahull@csgrr.com

- **Adam G Levine**
  alevine@omm.com,scoates@omm.com,amayorkas@omm.com,cdemeke@omm.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`