Darrell Palmer (CA SBN 125147)
Email:  darrell.palmer@palmerlegalteam.com
Janine R. Menhennet (SBN 163501)
Law Offices of Darrell Palmer
603 North Highway 101, Ste A
Solana Beach, California 92075
Telephone: (858) 792-5600
Facsimile: (858) 792-5655

Attorney for Objector Sonia Newman

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SHAWNDEE HARLESS, on Behalf of Herself and All Others Similarly Situated and the General Public,<br><br>      Plaintiff,<br><br>vs.<br><br>CLOROX COMPANY,<br><br>      Defendant. | 06-cv-2705-JAH(CAB)<br><br>**OBJECTION OF SONIA NEWMAN TO MOTION FOR APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS, AND APPLICATION FOR ATTORNEYS' FEES**<br><br>Date: December 29, 2010<br>Time: 1:30 p.m.<br>Judge: Cathy Ann Bencivengo |

06-CV-2705-CAB

OBJECTION OF SONIA NEWMAN TO MOTION FOR APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS, AND APPLICATION FOR ATTORNEYS' FEES

## TABLE OF CONTENTS

I.     THE CY PRES RECIPIENTS MUST BE IDENTIFIED IN THE SETTLEMENT ............. 1

II.    THERE IS AN INSUFFICIENT SHOWING OF PREDOMINANCE,
       WHICH DEFEATS CLASS CERTIFICATION ……………………………………….. 3

III.   CONSUMER PROTECTION STATUTES ARE IN CONFLICT ………………………. 5

       1.  Reliance by Plaintiffs  ……………………………………………………  6
       2.  Choice of Law ……………………………………………………………7
       3.  Breach of Warranty  ……………………………………………………  7
       4.  Eligibility to Maintain Class Actions  ……………………………………8
       5.  Scienter of Defendants  …………………………………………………  8

IV.    THE PREDOMINANCE INQUIRY IS PARAMOUNT, EVEN WHEN A
       SETTLEMENT IS PENDING ………………………………………………………….. 9

V.     INSUFFICIENT INFORMATION IS AVAILABLE REGARDING
       THE REASONABLENESS OF THE REQUESTED ATTORNEYS' FEES ………..…  10

VI.    CALIFORNIA LAW APPLIES WITH RESPECT TO AWARDING
       ATTORNEYS' FEES ………………………………………………………………  11

VII.   THE COURT SHOULD REVIEW FEE SPLITTING AMONG ATTORNEYS ………… 13

VIII.  CLASS COUNSEL SEEKS TO RECOVER UNREIMBURSEABLE COSTS ………  14

       A.  Copies  …………………………………………………………………  15
       B.  Legal Research ……………………………………………………………  15
       C.  Other Costs Requested  ……………………………………………………  17

IX.    VALUE OF OBJECTORS …………………………………………………………  17

X.     CLASS COUNSEL HISTORY OF POSITION TOWARD OBJECTORS ………………18

XI.    NOTICE OF JOINDER ……………………………………………………………  19

XII.   CONCLUSION …………………………………………………………………………19

06-CV-2705-CAB
OBJECTION OF SONIA NEWMAN TO MOTION FOR APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS,
AND APPLICATION FOR ATTORNEYS' FEES

# TABLE OF AUTHORITIES

## CASES

Amchem Products

521 U.S. at 620 …………………………………………………….......................... 5, 9

Arnold v. Microsoft Corp.

2001 WL 193765 (Ky.Cir.Ct. 2000) …………………………………......................... 8

Baker v. Family Credit Counseling Corp.

440 F.Supp.2d 392 (E.D.Pa. 2006) …………………………………......................... 9

Bruno v. Superior Court

127 Cal.App.3d 120 (1980) ………………………………………………….................. 2

Carpenters Health & Welfare Fund vs The Coca-Cola Company

587 F. Supp 1206 (N.D. Ga. 2008) …………………………………......................... 15

Chin v. Chrysler Corp.

182 F.R.D. 448, 457-61 (D.N.J. 1998) …………………………………..................... 6, 7

Denney v. Deutsche Bank AG

443 F.3d 253, 270 (2d Cir. 2006) …………………………………......................... 5, 9

Dodson v. U-Needa Self Storage, LLC

32 Kan.App.2d 1213 (2004) …………………………………......................... 8

Dunk v. Ford Motor Co.

48 Cal.App.4[th] 1794, 1801(1996) ………………………………………….................. 1, 13

Feeney v. Disston Manor Personal Care Home, Inc.

849 A.2d 590, 597 (Pa. Super. 2004) …………………………………....................... 6

Friskney v. American Park and Play, Inc

2007 US Dist. LEXIS 14619, SD Fl. 2000 …………………………………................ 16

Gemelas v. The Dannon Company

Case Number 1:08-cv-00236 (N.D. Ohio) …………………………........................ 18, 19

In re: Bicoastal Corp.

121 B.R. 653, 656 (Bkrtcy. M.D. Fla. 1990) …………………………………...............16

In re Bridgestone/Firestone Inc. Tires Prod. Liab. Litig.

288 F.3d 1012, 1017 (7th Cir. 2002) …………………………………….......................... 4

In re Ford Motor Co. Ignition Switch

174 F.R.D. 332, 347-48 D.N.J. (1997) …………………………………………………… 6

In re Ford Motor Co. Ignition Switch Prods.

194 F.R.D. 484, 489-91 (D.N.J. 2000) …………………………………………………… 9

In re General Motors Corp. Dex-Cool Products Liability

241 F.R.D. 305, 316-19 (S.D.Ill. 2007) ………………………………………….…. 6, 7, 9

In re General Motors Corp.

55 F.3d 768, 803 (3rd Cir. 1995)  …………………………………………………….... 18

In re Grand Theft Auto Video Game Consumer Litigation

251 F.R.D. 139 (S.D.N.Y. 2008) ……………………………………………………… 5 - 9

In re HPL Technologies, Inc. Sec. Litig.

366 F.Supp.2d 912, 921 (N.D.Cal. 2005) …………………………………………....…11

In re Mercury Interactive Corp. Sec. Litig.

618 F.3d 988 (9th Cir. 2010) …………………………………………………………… 11

In re Pharmaceutical Ind. Average Wholesale Price Litigation

252 F.R.D. 83, 94 (D.Mass. 2008) …………………………………….......................…10

In re Relafen Antitrust Litig.

225 F.R.D. 14 (D.Mass. 2004); 346 F.Supp.2d 349 ……………….….................. 4, 10

In re Vitamin Cases

110 Cal.App.4th 1041 (2003) …………………………………………………………… 12

In re Warfarin [Sodium Antitrust Litigation]

391 F.3d 516, 529 (3d Cir. 2004) ……………………………………………………….. 5

In re Zyprexa

2008 WL 2696916 at 138 ……………………………………………………………… 9

James vs. Wash Deport Holdings Inc.

2007 U.S. Dist LEXIS 38809 S.D. Fl 2007 ……………………………….......... 15

Kessler v. Fanning

953 S.W.2d 515, 521 (Tex. App. 1997) ……………………………...........................… 8

Ketchum v. Moses

24 Cal.4th 1122 (2001) …………………………………………........................…… 12, 13

Leallao v. Beneficial California, Inc.

82 Cal.App.4th 19, 37-39 (2000) ……………………….......................……………… 13

Leftwich v. Harris-Stowe State College

702 F. 2d 686, 695 (8th Cir. 1983) …………………………....................……………… 16

Lynas v. Williams

216 Ga. App. 434 (1995) …………………………………….....................…………… 6

Mangold v. California Public Utilities Comm'n

67 F.3d 1470, 1478 (9th Cir. 1995) ………………………………....................………… 12

Mark v. Spencer

166 Cal.App.4[th] 219, 225 (2008) …………………………….......................………… 13, 14

McLaughlin v. American Tobacco Co.

522 F.2d 215, 223 (2d Cir. 2008) …………………………………...................……… 7, 9

Milliron v. T-Mobile USA, Inc.

2009 U.S. Dist. Lexis 101201 at *70, D. N.J. Sept 10, 2009 …………………………… 16

Northern Heel Corp. v. Compo Indus.

851 F.2d 456, 475 (1st Cir. 1988) …………………………………......................……… 12

Ortiz v. Fibreboard Corp.

527 U.S. 815 (1999) …………………………………………….......................……….... 4

Rodriguez v. West Publishing

563 F.3d 948 (9th Cir. 2009) …………………………………………………………… 17

S. States Police Benevolent Assn, Inc. v. First Choice Armor & Equip., Inc.

241 F.R.D. 85, 93 (D.Mass. 2007) …………………………………......................…… 10

Sam v. Beaird

685 So.2d 742, 744 (Ala.Civ.App. 1996) …………………………………...............…… 8

iv

06-CV-2705-CAB

OBJECTION OF SONIA NEWMAN TO MOTION FOR APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS,
AND APPLICATION FOR ATTORNEYS' FEES

1  Security Mutual Life Ins. Co. v. Contemporary Real Estate Assoc.

2  979 F.2d 329, 331-32 (3d Cir. 1992) ……………………………………...........................12

3  Serrano v. Priest

4  20 Cal.3d 25 (Serrano III) (1977) ………………………………………… 12

5  Small v. Lorillard Tobacco Co.

6  94 N.Y.2d 43 (N.Y. 1999) …………………………………………...........................8

7  Standley v. Chilhowee R-IV School Dist.

8  5 F. 3d 319, 325 & n. 7 (8th Cir. 1993) ………………………………………… 16

9  State of California v. Levi Strauss & Co.

10  41 Cal.3d 460, 472 (1986) ……………………………………………………… 2

11  Thompson v. Jiffy Lube Int'l, Inc.

12  250 F.R.D. 607, 624-26 (D.Kan. 2008) ………………………………………… 6

13  U.S. v. Merritt Meridian Constr. Corp.

14  95 F. 3d 153 (2d Cir. 1996) …………………………………………............ 15

15  Vollmer v. Selden

16  350 F.3d 656 (7th Cir. 2003) ……………………………………………………… 17

17  Weinberger v. Great Northern Nekoosa Corp.

18  801 F. Supp. 804, 827-29 (D. Me. 1992) …………………………………........... 16

19  Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.

20  84 N.Y.2d 309 (N.Y. 1994) …………………………………………… 7

## STATUTES

California *Civil Code* sections
    1750 …………………………………………………………………………………... 1
California *Business and Professions Code* section
    17200 ……………………………………………………………………… 1
California *Civil Code* section
    3541 ………………………………………………………………………….. 14

## OUT OF STATE STATUTES

New Mexico Stat. Ann. §57-12-10(B) …………………………………………… 3

06-CV-2705-CAB
OBJECTION OF SONIA NEWMAN TO MOTION FOR APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS,
AND APPLICATION FOR ATTORNEYS' FEES

Montana Code Ann. §30-14-133W ................................................................................ 3
Texas Bus. & Com. Code §17.50(a)(1)(B) ................................................................. 6
Wyoming Stat. Ann. §40-12-108(a) ........................................................................... 6
Alabama Code §8-19-10(f) ......................................................................................... 8
Georgia Code Ann. §10-1-399(a) ............................................................................... 8
Louisiana Rev. Stat. Ann. §51:1409(A) ...................................................................... 8
Mississippi Code Ann. §75-24-15(4) .......................................................................... 8
Colorado Rev. Stat. Ann. §6-1-105(l)(u) .................................................................... 8
Nevada Rev. Stat. Ann. §598.0979(l) .......................................................................... 8

## OTHER AUTHORITY

Federal Rules of Civil Procedure Rule

    Rule 23 ................................................................................................... 3, 9

    Rule 23(a) ...................................................................................................... 4

    Rule 23(e)(3) ............................................................................................... 14

    Rule 23(e)(5) ................................................................................................17

California Rules of Civil Procedure

    Rule 3.769(b) ............................................................................................... 14

    Rule 3.769 .................................................................................................... 14

California Rules of Professional Conduct

    Rule 2-200(A) .............................................................................................. 13

## TREATISES

Manual for Complex Litigation (Fourth), §22.634, p. 412 (2004) ........................... 10

COMES NOW, Class Member SONIA NEWMAN, by and through the undersigned counsel, and hereby objects to the Settlement Agreement preliminarily approved on August 13, 2010, and hereby notifies this Court of her intention to appear by and through the undersigned, to present argument in this matter at the Fairness Hearing currently set for December 29, 2010.  The Settlement Agreement, Motion for Certification, and Application for Attorneys' Fees should not be approved for the following reasons:

1.      The cy pres recipients must be identified in the Settlement Agreement to allow the Court to determine whether they fulfill the underlying purpose of the litigation.

2.      The Court has not made a finding of predominance.  The parties are not free to confer predominance absent Court scrutiny.

3.      The application for attorneys' fees is incomplete without the billing records.

4.      The fees must be awarded under California, not federal, law.

5.      All fee sharing agreements among class counsel must be disclosed and scrutinized.

6.      Class Counsel seeks to recover costs which are not recoverable.

This Objector's address and telephone number are available and can be obtained from her counsel of record.  These are personal identifying items and this Ms. Newman objects to having them filed in public documents.  Ms. Newman's affirmation of class membership is attached as Exhibit A.

**I.**

**THE CY PRES RECIPIENTS MUST BE IDENTIFIED IN THE SETTLEMENT**

A trial court must approve a class action settlement agreement and may do so only after determining it is fair, adequate and reasonable.  *Dunk v. Ford Motor Co.* 48 Cal.App.4th 1794, 1801 (1996).  Applying California law is appropriate in this matter since the complaint only causes of action arise under California *Civil Code* section1750 and California Business and Professions Code section 17200.  (First Amended Class Action Complaint, Document 16.)  More specifically, when the Court

OBJECTION OF SONIA NEWMAN TO MOTION FOR APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS,
AND APPLICATION FOR ATTORNEYS' FEES

seeks to approve a proposed *cy pres* distribution, the Court should determine whether the proposed distribution was useful in fulfilling the purposes of the underlying cause of action. *State of California v. Levi Strauss & Co.* 41 Cal.3d 460, 472 (1986). In the present case, the Court never even gets to that analysis, because no *cy pres* recipients are identified in the Settlement whatsoever.

The Settlement proposes the following *cy pres* component: **If** there is any money left in the claim fund, it "shall be distributed to an appropriate non-profit or civic entity(ies) agreed to by the Parties and approved by the Court for use in a manner that the Court shall determine will be an appropriate vehicle to provide the next best use of compensation to Class Members arising out of claims that have been made by Plaintiff in this Action." (Settlement at 9, section B(2)(d), Document 77.) This noncommittal afterthought does not fulfill the requirements of *cy pres,* that the recipients be identified so that the Court can determine whether this distribution is fair and appropriate, and put to the "next best use." *See, Bruno v. Superior Court* 127 Cal.App.3d 120, 129 (1980) ("The general inquiry is whether the use of such a mechanism is consistent with the policy or policies reflected by the statute violated.").

The underlying purposes of the lawsuit are to stop the alleged false claims that the tablets do not harm plumbing, and provide recovery for those consumers whose plumbing was harmed by the corrosive product. A starting point for identifying appropriate *cy pres* recipients may lie in this: the Metropolitan Water District had a policy to reduce overuse of water, and promote low-flow toilets, which were apparently damaged by the Defendant's product. Contributions to environmental organizations, or subsidies to install low-flow toilets in low-income homes may be appropriate. The *cy pres* recipients must be chosen with these guidelines; absent identification, the Court cannot reach a determination regarding the fairness of the settlement as a whole.

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.

## THERE IS AN INSUFFICIENT SHOWING OF PREDOMINANCE, WHICH DEFEATS CLASS CERTIFICATION

The proposed Class cannot be certified.  Consumer protection laws of the states which are contemplated in the class description are significantly different.  The proposed settlement cannot be approved because it fails to recognize, and apply, significant differences among the consumer protection laws and remedies. The complaints on file in this matter allege claims under California law for violation of the Consumer Legal Remedies Act, and violation of Unfair Competition Law.  Named class members are from California and Illinois.  The Settlement attempts to provide relief to class members from all 50 states.  This matters because each state provides different remedies for consumer protection statutes. For example, in New Mexico, an aggrieved consumer is entitled to the greater of actual damages or $100, whichever is greater (N.M. Stat. Ann. §57-12-10(B)), while in Montana, a consumer can recover the greater of actual damages or $500 (Mont. Code Ann. §30-14-133W).  This makes a claim in Montana five times more valuable than a claim in New Mexico and more valuable still than in a state with no enhanced damages for consumer injury.  This disparity defeats predominance under Rule 23.

Class Counsel offers a blanket, unsupported statement in support of predominance:  "the Class Members are entitled to the same legal remedies premised on the same alleged wrongdoing," and then mentions "whether misrepresentation was likely to deceive a reasonable consumer."  (Plaintiff's Motion for Approval at 16, lines 24-27, Document 81-1.)  These assertions are false.  In addition to the two examples above between Montana and New Mexico, numerous other examples defeat predominance, especially in the misrepresentation context.

The clear mandate in recent consumer protection class actions is that (1) certification must be rejected, and (2) where certification is permitted, the settlement must be structured to accommodate the differences among the states' statutes.

Under Rule 23(a), Class Counsel must show that the interests of the representative party do not conflict with the interests of any of the absent class members.  The proposed settlement fails under this requirement, since there is an intra-class conflict of interest that renders Class Counsel, as well as the class representatives, inadequate, because it fails to differentiate between residents of the various states.  While it may seem burdensome to engage in a state-by-state analysis, many courts have undertaken that burden in the interests of equity and of permitting a class settlement to be approved.  As appellate courts have instructed, if it is too burdensome to perform a proper choice-of-law analysis, the appropriate remedy is decertification of the class, not to gloss over the issue and split things up equally.  *See, In re Bridgestone/Firestone Inc. Tires Prod. Liab. Litig.* 288 F.3d 1012, 1017 (7th Cir. 2002) ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's laws to sales in other states with different rules.").  Decertification is not required, however, if the Court (or Class Counsel) can rationally divide the class to factor in the applicable consumer protection laws, as the court did in *In re Relafen Antitrust Litig.* 225 F.R.D. 14; 346 F.Supp.2d 349 (D.Mass. 2004).

In *Ortiz v. Fibreboard Corp.* 527 U.S. 815 (1999), the Supreme Court noted that one factor counseling against certification of the settlement class was the fact that certain claimants "had more valuable claims . . . the consequence being an . . . instance of disparate interests.  *Id.* at 857.  The Court therefore held that when class members have claims of varying strength or merit, it is an *abuse of discretion* to approve a settlement that treats them all the same."  *Id.*  This is clear from the example above, where a consumer claim in Montana is five times as valuable as a consumer claim in New

Mexico.  Applying the law, consumers in Montana would receive a greater benefit than consumers in New Mexico.

## III.

## CONSUMER PROTECTION STATUTES ARE IN CONFLICT

Recently, class certification was rejected under circumstances similar to those here.  In *In re Grand Theft Auto Video Game Consumer Litigation* 251 F.R.D. 139 (S.D.N.Y. 2008), District Judge Shirley Wohl Kram performed a thorough analysis and reluctantly concluded that a nationwide class must be decertified because variations in consumer protection laws precluded a finding that common questions of law predominated.  The court held that each class member's state of purchase applied to each claim, requiring application of laws of 50 states and the District of Columbia.  *Id.* at 149.  She relied on a long line of class actions which reached the same result:

> The predominance inquiry – as distinguished from the trial-manageability inquiry – should not be watered down merely because the parties have entered a proposed settlement.  *Amchem Products,* 521 U.S. at 620; *Denney v. Deutsche Bank AG* 443 F.3d 253, 270 (2d Cir. 2006); *In re Warfarin [Sodium Antitrust Litigation]* 391 F.3d 516, 529-30 (3d Cir. 2004).  Under the facts of this case, differences in the applicable state laws go to the heart of Settlement Class members' substantive claims, and thus undermine the Settlement Class' cohesiveness.  Therefore, certification of the Settlement Class is especially inappropriate, despite the existence of the Settlement.

Individual Settlement Class members face distinctly different potential legal obstacles to recovery.  For example, the reliance issue is irrelevant to Settlement Class members from states not requiring a showing of reliance to make out a claim for consumer fraud [citations to Kansas, New Jersey, Delaware, and Arizona laws], while reliance is of the essence to those Class members who purchased [the videogame] in reliance states [citations to Texas and Wyoming laws].

*In re Grand Theft Auto Video Game Consumer Litigation* 251 F.R.D. 139, at 159-60 (S.D.N.Y. 2008).

Judge Wohl Kram compared numerous states with respect to proof requirements, limitations periods,

and other critical factors:

> Most of the courts that have addressed the issue have determined that the consumer-fraud and breach-of-warranty laws in the fifty states differ in relevant respects. *See, Thompson v. Jiffy Lube Int'l, Inc.* 250 F.R.D. 607, 624-26 (D.Kan. 2008) (consumer fraud); *In re General Motors Corp.* 241 F.R.D. 305, 316-19 (S.D.Ill. 2007) (warranty); *Chin v. Chrysler Corp.* 182 F.R.D. 448, 457-61 (D.N.J. 1998) (consumer fraud and warranty); *In re Ford Motor Co. Ignition Switch* D.N.J. 174 F.R.D. 332, 347-48 (1997) (consumer fraud and warranty). . . .  There are many relevant differences in the states' consumer-fraud and warranty laws.  Because these differences are all relevant – indeed, some of them are outcome determinative . . . there are actual conflicts among the states' consumer-fraud and warranty laws.

*In re Grand Theft Auto Video Game Consumer Litigation* 251 F.R.D. 139, at 147 (S.D.N.Y. 2008).  This

discussion is appropriate, and dispositive in this case, because the claims in this action stem from

consumer fraud, breach of warranty, and false advertising (see First Amended Complaint, ¶¶ 19, 21, 22,

23, 24, *et al.*).

      Examination of the issues present exposes that the application of the states' different laws leads

to irreconcilable conflict for the proposed class.

**1.  Reliance by Plaintiffs.**

      Reliance is an element of consumer fraud in some states, including Texas, Wyoming, Georgia,

and Pennsylvania (Tex. Bus. & Com. Code §17.50(a)(1)(B); Wyo. Stat. Ann. §40-12-108(a);  *Lynas v.*

*Williams* 216 Ga. App. 434 (1995); *Feeney v. Disston Manor Personal Care Home, Inc.* (Pa. Super.

2004) 849 A.2d 590, 597).  Indeed, the Complaint indicates that reliance is a material element:

"Plaintiff and Class members had a reasonable expectation . . . and reasonably relied on defendant's

representations." (First Amended Complaint, ¶26.)  But the alleged uniformity of the defendants'

fraudulent conduct is insufficient, on its own, to justify a finding of predominance.  *McLaughlin v. American Tobacco Co.* 522 F.2d 215, 223 (2d Cir. 2008):  "But proof of misrepresentation – even widespread and uniform misrepresentation – only satisfies half the equation; the other half, reliance on the misrepresentation, cannot be subject to general proof."  Accordingly, reconciling the different states' laws regarding reliance within misrepresentation defeats predominance.  *See, In re Grand Theft Auto Video Game Consumer Litigation* 251 F.R.D. 139, at 146, 154-55 (S.D.N.Y. 2008).

## 2.  Choice of Law.

Choice of law provisions regarding breach of warranty claims vary widely and prevent a finding of predominance.  *In re Grand Theft Auto Video Game Consumer Litigation* 251 F.R.D. 139, at 146 (S.D.N.Y. 2008).  For example, in *In re General Motors Corp. Dex-Cool Products Liability* 241 F.R.D. 305, 316-19 (S.D.Ill. 2007), the court determined that the law of the state where each plaintiff resides should apply to claims for breach of warranty, and in *Chin v. Chrysler Corp.* 182 F.R.D.  448, 457 (D.N.J. 1998)  , the court agreed that the law of each plaintiff's home state should apply to claims for fraud and breach of warranty.  This is especially true, as here, where the class members are indirect purchasers; i.e, the consumers did not buy from Clorox, but from the retailers.  As there are 50 states with differing fraud and reliance requirements, commonality does not exist.

## 3.  Breach of Warranty.

The general consensus is that the plaintiff's home state controls the assessment of a breach of warranty claim.  *In re Grand Theft Auto Video Game Consumer Litigation* 251 F.R.D. 139, at 149 (S.D.N.Y. 2008).  *See also, Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.* 84 N.Y.2d 309 (N.Y. 1994); *Dex-Cool, supra,* 241 F.R.D. at 316-19; and *Chin, supra,* 182 F.R.D. at 457, which applied the law of the state where each plaintiff resides to breach of warranty claims.  Breach of warranty is contained in

OBJECTION OF SONIA NEWMAN TO MOTION FOR APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS, AND APPLICATION FOR ATTORNEYS' FEES

Count I of the Amended Complaint.  As the states have differing requirements, predominance is destroyed.

### 4.  Eligibility to Maintain Class Actions.

Even the ability to be a class member is destroyed when referring to each state's requirements for consumer fraud actions.  *In re Grand Theft Auto Video Game Consumer Litigation* 251 F.R.D. 139, at 160-61 (S.D.N.Y. 2008).  Some settlement class members are barred from participating in any consumer fraud class action, including this one.  *See, e.g.,* Ala. Code §8-19-10(f); Ga. Code Ann. §10-1-399(a); La. Rev. Stat. Ann. §51:1409(A); Miss. Code Ann. §75-24-15(4).  In *Arnold v. Microsoft Corp.* 2001 WL 193765 (Ky.Cir.Ct. 2000), the court held that the relevant Kentucky consumer fraud provision does not permit a class action suit.  This affects a class member's ability to participate in a nationwide settlement.

### 5.  Scienter of Defendants.

Several states do not require a showing of scienter in the consumer fraud arena, such as New York and Texas.  *Small v. Lorillard Tobacco Co.* 94 N.Y.2d 43 (N.Y. 1999); *Kessler v. Fanning*  953 S.W.2d 515, 521 (Tex. App. 1997).  Some states, however, require proof of intent, such as Colorado, Nevada, Kansas, and Alabama.   Colo. Rev. Stat. Ann. §6-1-105(l)(u); Nev. Rev. Stat. Ann. §598.0979(l); *Dodson v. U-Needa Self Storage, LLC* 32 Kan.App.2d 1213 (2004); *Sam v. Beaird* 685 So.2d 742, 744 (Ala.Civ.App. 1996).  *See,* In re Grand Theft Auto Video Game Consumer Litigation 251 F.R.D. 139, at160 (S.D.N.Y. 2008).

These differing proof requirements also undercut a finding of predominance of legal issues.

/ / /

/ / /

06-CV-2705-CAB
OBJECTION OF SONIA NEWMAN TO MOTION FOR APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS, AND APPLICATION FOR ATTORNEYS' FEES

1

2

3

## IV.

**THE PREDOMINANCE INQUIRY IS PARAMOUNT, EVEN WHEN A SETTLEMENT IS PENDING**

This Objector has illustrated five very divergent issues which destroy the predominance inquiry under Rule 23.  Judge Wohl Kram discussed the importance of this issue:

> The predominance inquiry, however, "trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.  *Amchem Products,* 521 U.S. at 623.  Accordingly, the Settlement does not relieve the Court of its duty to perform a robust analysis of the plaintiffs' predominance showing.  *See, Amchem Prods.,* 521 U.S. at 620 (indicating that specifications of Rule 23 other than trial-manageability requirement "demand undiluted, even heightened, attention in the settlement context"); *Denney, supra,* 443 F.2d at 270 (strictures of Rule 23 should not be loosened because of settlement).

*In re Grand Theft Auto Video Game Consumer Litigation* 251 F.R.D. 139, at 156 (S.D.N.Y. 2008).

Many courts have determined that differences in the underlying state laws applicable to individual

putative class members' consumer-protections claims preclude a finding of predominance.  *See, e.g.,*

*McLaughlin v. American Tobacco Co.* 522 F.3d 215 (2d Cir. 2008); *In re Zyprexa,* WL 2696916 2008at

138 (tentatively holding that differences in state consumer practice laws defeat predominance); *Dex-*

*Cool, supra,* 241 F.R.D. at 315 (holding that differences in state warranty laws defeated predominance);

*In re Ford Motor Co. Ignition Switch Prods.* 194 F.R.D. 484, 489-91 (D.N.J. 2000) (finding that

differences in state consumer protection laws defeats predominance, even under proposed grouping of

similar state laws).  In particular, the court in *Baker v. Family Credit Counseling Corp.* 440 F.Supp.2d

392 (E.D.Pa. 2006), stated that "When district courts have faced the problem of nationwide classes

which seek to apply state consumer protection laws, those courts have refused to certify a class, in part

because choice of law would require applying the consumer protection law of each class member's

home state."  440 F.Supp.2d at 414.  Other courts have reached the same result.  *In re Pharmaceutical*

OBJECTION OF SONIA NEWMAN TO MOTION FOR APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS, AND APPLICATION FOR ATTORNEYS' FEES

*Ind. Average Wholesale Price Litigation* 252 F.R.D. 83, 94 (D.Mass. 2008); *S. States Police Benevolent Assn, Inc. v. First Choice Armor & Equip., Inc.* 241 F.R.D. 85, 93 (D.Mass. 2007)  (consumer protections laws varied in eight states, precluding certification).

In the present situation, wide differences exist between jurisdictions.  Accordingly, the burden belongs to Class Counsel to conduct an extensive review of state law variances to demonstrate how grouping would work, as recommended by the Manual for Complex Litigation (Fourth), §22.634, p. 412 (2004).  This method has worked in cases such as *In re Relafen,* 221 F.R.D. at 265 and 289, which certification was granted in part and denied in part.  In that case, certain groups of states could be covered by class certification, and not others, depending on the claims. Further analysis into the possibility of creating subgroups based upon application of their breach of warranty and misrepresentation claims is called for in this instance before certification and settlement can be approved.

**V.**

**INSUFFICIENT INFORMATION IS AVAILABLE REGARDING THE REASONABLENESS OF THE REQUESTED ATTORNEYS' FEES**

Class Counsel is apparently requesting an omnibus $2,250,000 in attorneys' fees.  Five different firms have made declarations supporting their professed lodestar.  However, no information has been provided to the class regarding the details of this request.  Objectors are unable to analyze the lodestar, calculate the requested multiplier or complete any comparative analysis of the actual fund available to the class and the requested fees.

Without more information, the percentage sought seems high.  The actual fund being provided is $6.2 million, as Clorox is parting with $7 million, but $750,000 of that is for administration costs, leaving approximately $6.2 million for disbursement.  $2.25 million constitutes 36% of $6.2 million, a

10

percentage grossly exceeding the usual 25% benchmark many courts begin with.  The Settlement reveals that the apparent $8 million figure will not exist, unless the entire $7 million is exhausted in claims (an extremely unlikely event).

Other concerns regarding the declared lodestar involve duplication of effort.  There are at least five firms laying claim to this $2.5 million fund.  Many of these firms are out-of-state.  No billing sheets are available to scrutinize duplicated efforts, nor is any information provided regarding the reasonableness of the time in relation to the work product.  The lack of information prevents the Court from engaging in a meaningful analysis regarding whether the fees are in fact reasonable.

Finally, concerns arise regarding the hourly rate of some of the professionals.  For example, Ingrid Evans seeks to recover fees in the amount of $250 per hour for paralegals.  (Evans Decl., ¶6, Document 93.)   This rate is vastly greater than that suggested by the widely-accepted Laffey Matrix, which forms a benchmark of reasonable hourly rates in this Circuit.  *See, In re HPL Technologies, Inc. Sec. Litig.* 366 F.Supp.2d 912, 921 (N.D.Cal. 2005).  The current hourly rate for a paralegal on the Laffey Matrix  is $161.  (The current Matrix is attached as Exhibit B.)  This fundamental difference requires further scrutiny by the Court, and perhaps justifies an independent audit of the claimed fees.

The court should bifurcate the hearing on the final approval of the settlement and the hearing on the award of attorney fees until such time as all time records are received, reviewed and tabulated.  Approving and distributing the attorney fees should be consistent with an attorney's duty to put a client's interest first.  Once these records have been filed, all class members should be given the opportunity to review the fee request by their attorneys, consistent with *In re Mercury Interactive Corp. Sec. Litig.* 618 F.3d 988 (9th Cir. 2010).  Any such fee applications and all supporting documents should be available to the class and the public on a settlement website.  Objectors request and reserve the right

to supplement their objections after review of the attorney fee application is sufficiently completed.  A summary of one attorney's time does not comply with *Mercury*.

## VI.

## CALIFORNIA LAW APPLIES WITH RESPECT TO AWARDING ATTORNEYS' FEES

The necessity of applying individual state remedies under consumer protection acts has a corresponding necessity to analyze the fee requests under each state's law.

The applicable law must be determined; it is not a nebulous or irrelevant consideration.  In cases of diversity jurisdiction (of which this is), federal courts apply state substantive law to determine the method of calculating attorneys' fees.  *Security Mutual Life Ins. Co. v. Contemporary Real Estate Assoc.* 979 F.2d 329, 331-32 (3d Cir. 1992); *Mangold v. California Public Utilities Comm'n* 67 F.3d 1470, 1478 (9th Cir. 1995); *Northern Heel Corp. v. Compo Indus.* 851 F.2d 456, 475 (1st Cir. 1988).

While Class Counsel cites to Ninth Circuit and other federal law to support its attorneys' fees application, this is clearly the incorrect benchmark.  The claims made in this case are firmly tethered to California statutes, in the Civil Code and Business and Professions Code.  Accordingly, California rather than federal law applies to the attorneys' fee application.  California, as mentioned, adheres to the lodestar approach, for which no information has been provided as yet.

The California Supreme Court, in *Serrano v. Priest* 20 Cal.3d 25 (1977) (*Serrano III*), made it clear that "the starting point of every fee award . . . must be a calculation of the attorney's services in terms of the time he has expended on the case.  Anchoring the analysis to this concept is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts." *Id.* at 48, n 23.  *See also, Ketchum v. Moses* 24 Cal.4th 1122 (2001), *In re Vitamin Cases*, 110 Cal.App.4th 1041 (2003).   Recent cases confirm that the lodestar method is required in all cases, including those involving unconventional common funds.  *See, Leallao v.*

*Beneficial California, Inc.* 82 Cal.App.4th 19, 37-39 (2000); *Dunk v. Ford Motor Co*. 48 Cal.App.4th 1794, 1809-11 (1996).  Despite a contrary trend in many of the federal courts, California maintains its strict adherence to the lodestar approach.  *Ketchum, supra*.  Furthermore, although a multiplier may be applied for and awarded, such an award is not automatic but is based upon a variety of factors including the novelty of the case, the skill and expertise of counsel, and the benefit conferred on the Class.  In short, this issue is hardly ripe for discussion until the fee application is fully complete and available to the entire class, preferably on a settlement website for all to see.

## VII.

### THE COURT SHOULD REVIEW FEE SPLITTING AMONG ATTORNEYS

There is a clear mandate under California Rules of Professional Conduct, Rule 2-200(A), that class counsel should produce all fee-splitting agreements among class counsel, to the extent there are any.  Several conflicts are inherent in fee-splitting, of which the client has a right to be aware.  *Mark v. Spencer* 166 Cal.App.4th 219, 225 (2008):

> [A] potential conflict concerns the attorneys' tactical decisions in the litigation.  For example, is one attorney subject to an agreement to split fees equally discovers he or she is spending far more time on the case than cocounsel, the attorney may push for an early settlement to stem the losses.  Conversely, an attorney spending less time on the case may wish to drag the litigation out, knowing he or she will eventually recover fees disproportionately larger than those actually incurred.

For this reason, Rule 2-200(A) provides that: "A member shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless:  (1)  The client has consented in writing thereto after a full disclosure **has been made in writing that a division of fees will be made and the terms of such division."**  (Emphasis added.)

13

Apart from mandatory disclosure of all fee-splitting agreements under the Rules of Professional Conduct, California Rules of Court require the disclosure of all fee agreements touching class actions. Rule 3.769(b) provides as follows:

> Any agreements, express or implied, that has been entered into with respect to the payment of attorneys' fees or the submission of an application for the approval of attorneys' fees **must be set forth in full in any application for approval of the dismissal or settlement of an action** that has been certified as a class action." (Emphasis added.)

As cited above, this parallels the Federal Rules of Civil Procedure which contain the same requirement of disclosure at Rule 23(e)(3): "the parties seeking approval of a class action settlement must file a statement identifying any agreement made in connection with the proposal." This language is mandatory, requiring production of all fee agreements regarding sharing fees with clients, incentive promises to clients, splitting fees with co-counsel, and any other financial arrangement touching the class action.

The mandatory nature of this Rule hearkens back to the conflicts discussed *supra,* "to protect class members from potential conflicts of interest with their attorneys by requiring the full disclosure of all fee agreements in any application for dismissal or settlement of a class action. Rule 3.769 would be effectively nullified if attorneys could conceal a fee-splitting agreement from the court in seeking approval of a class action settlement. . . ." *Mark,* 166 Cal.App.4[th] at 223. Void interpretations of rules are disfavored: "An interpretation which gives effect is preferred to one which makes void." *Civil Code* section 3541.

## VIII.

## CLASS COUNSEL SEEKS TO RECOVER UNREIMBURSEABLE COSTS

In addition to a total absence of information regarding the fee lodestar, every Class Counsel declaration seeks to recover costs which are not recoverable.

14

**A.  Copies.**

Every declaration seeking costs seeks reimbursement for photocopies.  Only attorney Stoia's declaration indicates that he is seeking reimbursement at a rate of $0.25 per page.  The other declarations do not provide that much information.  Twenty-five cent per page has never been approved. In several recent decisions, copying charges were limited to $.10 per copy.  Ten cents ($0.10) per copy is reasonable and should be reimbursed; higher amounts should be denied. The Court in *Carpenters Health & Welfare Fund vs The Coca-Cola Company*, 587 F. Supp 1206 (N.D. Ga. 2008) denied a request that in-house copying be reimbursed at $0.25 per page.   The Honorable Willis B. Hunt, Jr. stated that [p]aper, copier toner, wear and tear on a copier, and administrative assistant time are overhead costs that this Court will not reimburse.  Moreover [lead counsel's] out-of -pocket costs for copies could not have come close to reaching $0.25 per page. *Id.* at 1273.

See also *James vs. Wash Deport Holdings Inc. (*2007 U.S. Dist LEXIS 38809 S.D. Fl 2007), wherein the Court awarded Class Counsel reimbursement at the rate of $0.10 per copy.  After an extensive review of reported and unreported cases, the court concluded that the photocopying rate should approximate that of local print shops, unless the requesting party is able to provide factual support for the reasonableness of the higher in-house rate. Since no such evidence is yet on the record, the Court should award only $0.10 per page but must first inquire as to how many pages were copied.

**B.  Legal Research**

All Class Counsel submit costs for online legal research.  These costs are not allowable.  In  *U.S. v. Merritt Meridian Constr. Corp.,* 95 F. 3d 153 (2d Cir. 1996) the  court held that the  district court did not abuse its discretion in denying in full request for Westlaw costs, since "computer research is merely a substitute for an attorney's time… and is not a separately taxable cost. " *Id.* at 173.  Online research should not be reimbursed because that would, in effect, be compensating class counsel for maintaining

OBJECTION OF SONIA NEWMAN TO MOTION FOR APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS, AND APPLICATION FOR ATTORNEYS' FEES

their law library. This was also the conclusion of the Eighth Circuit when reviewing this exact question. In *Standley v. Chilhowee R-IV School Dist.,* 5 F. 3d 319, 325 & n. 7 (8th Cir. 1993) (citing *Leftwich v. Harris-Stowe State College*, 702 F. 2d 686, 695 (8th Cir. 1983)), the Eighth Circuit held that computer costs are part of the attorneys' fees and not to be taxed separately.  In the earlier *Leftwich* decision, the Court stated that "computer-aided research, like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of cost in addition to the attorneys' fee award" *Id.* at 695.  In *Standley*  the Court  stated "the law of this Circuit is that computer-based legal research must be factored into the attorneys' hourly rate, hence the cost of the computer time may not be added to the fee award." *Id.* at 325.  The Court expanded upon this in footnote 7 where it stated that time spent doing the computer-based legal research is compensable as part of counsels' billable hours, and that the actual cost for the on-line computer time "is a component of attorney fees and cannot be recovered in addition to the fee award." *Id.* at fn 7.  In *Friskney v. American Park and Play, Inc (2007 US Dist. LEXIS 14619, SD Fl. 2000)*  the Court found that "expenses for computerized legal research are part of the general overhead of a law firm and are **not** compensable."  (emphasis added).  *See also Weinberger v. Great Northern Nekoosa Corp.* 801 F. Supp. 804, 827-29 (D. Me. 1992)(Disallowing all computerized research expenses, which is "properly an item[*9] attributed to firm overhead"); *Milliron v. T-Mobile USA, Inc.*(2009 U.S. Dist. Lexis 101201 at *70, D. N.J. Sept 10,2009) (to the same effect).

As stated by one court:

> To accept the proposition that Lexis charges or any other computer research charges are compensable, one should also then conclude that the cost of acquisition of the lawyer's library and the cost of maintaining the library, even possibly, the depreciation of the law books would also be compensable.  No one has ever urged such a proposition yet, but of course, if one should, it would be clearly rejected as being without any justification.

*In re: Bicoastal Corp.* 121 B.R. 653, 656 (Bkrtcy. M.D. Fla. 1990).

Accordingly, all requests for cost reimbursement for online research should be denied.

C.  **Other costs requested.**

As with other overhead disallowed, Class Counsel seek to recover other administrative costs, which should be denied as well.  Ingrid Evans cites costs for messenger and overnight delivery. (Document 93.)  Marc Parker seeks costs for "telephone," in addition to "photocopy" **AND** "print copies."  (Document 94.)  Elaine Ryan seeks reimbursement for long distance telephone, scanning and coding softward, and meals.  (Document 92.)  John Stoia seeks costs for meals, transportation, postage, telephone, online fees, and litigation support.  (Document 96-2.)  And Richard Doherty seeks to recoup costs for postage, travel, electronic research, and printing, copying and scanning.  (Document 91.)  All of these are overhead expenses which should be disallowed upon further inquiry by the Court, and support the need for an independent audit of legal bills.

## IX.

## VALUE OF OBJECTORS

Objectors play a critical role in assuring that settlements and attorneys fees are reasonable and fair, which is why their existence is assured and guaranteed under Rule 23(e)(5).  Several cases have discussed why objectors are necessary to the class settlement process, including *Vollmer v. Selden* 350 F.3d 656 (7th Cir. 2003):

> Class counsel, for instance, might settle claims for significantly less than they are worth, not because they think it is in the class's best interest, but instead because they are satisfied with the fees they will take away.  [Citation.]  Intervenors counteract any inherent objectionable tendencies by reintroducing an adversarial relationship into the settlement process and thereby improving the chances that a claim will be settled for its fair value. . . .  The slightness of individual recovery does not make the counsel's purpose invalid nor his role as objector less **vital.**

350 F.3d at 660 (emphasis added).   Other cases agree that objectors add value to the class settlement. *See, Rodriguez v. West Publishing* 563 F.3d 948 (9th Cir. 2009):

17

The court was not focused on the incentive agreements before Objectors took exception to them after the motion to award payments to the class representatives was filed.  In the wake of that objection, the court denied the motion for incentive awards in its entirety because the amounts requested were unreasonable and the incentive agreements were inappropriate and contrary to public policy.  **The net effect was to leave $325,000 in the settlement fund** – for distribution to the class as a whole – that otherwise would have gone to the class representatives.  Given this, we cannot let stand a ruling that Objectors did nothing that increased the fund or substantially benefitted the class members.

563 F.3d at 963.  *See also, In re General Motors Corp.,* 55 F.3d 768, 803 (3rd Cir. 1995)("Where there is an absence of objectors, courts lack the independently-derived information about the merits to oppose proposed settlements.").  This "independent" information provided by objectors' counsel complements the Court's fiduciary role in protecting the class members, rather than detracting from it, and prevents a rubber stamp of a settlement which may not have resolved the issues in favor of the class members.

## X.

## CLASS COUNSEL HISTORY OF POSITION TOWARD OBJECTORS

Named Class Counsel Tim Blood has spearheaded this litigation.  He has also spearheaded countless other class suits in the past two years, including 39 class actions in the past 12 months.  (See Exhibit C, 39 cases in 2009-2010 and 10 in 2008-09.)  One can only estimate what the cost to society and shareholders is of these class action assaults.   Despite the fact that objectors have a right to lodge objections to settlements under Rule 23 and the clear shortcomings of his own settlements, Mr. Blood has taken aggressive, pejorative roles in attacking objectors in the past several years.

For example, in *Gemelas v. The Dannon Company,* case number 1:08-cv-00236 (N.D. Ohio), Mr. Blood called out "professional" objectors as "remoras" who have "extortion" schemes.  (*Gemelas,* Doc 67, Response to Objections, page 4.)  While Mr. Blood recounts examples of courts who had negative experiences with objectors, other courts, cited above herein, have had positive experiences with

objectors who improved the settlement for the benefit of the class.  For all of Mr. Blood's rhetoric, it turns out the court in *Dannon* in fact agreed with the objectors:  Class Counsel (including Mr. Blood) requested $10 million in fees for a professed lodestar of more than $7 million, and nearly $600,000 in costs.  (*Gemeles,* Doc 67, pp. 2-3.)  The Court instead allowed Class Counsel only $7 million in fees, reserving review of the additional $3 million fee request once the actual claims can be reviewed by the court. (*Gemeles,* Doc 71.)

## XI.

## NOTICE OF JOINDER

This Objecting class member herein also joins in all other well-taken objections filed by other objectors in this litigation.

## XII.

## CONCLUSION

WHEREFORE, This Objector respectfully requests that this Court:

A.  Upon proper hearing, sustain these Objections;

B.  Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

C.  Continue, or bifurcate, the Fairness Hearing until such time that this Objector has had an opportunity to review Class Counsel's Complete Fee Application.

D.  Order an independent audit of the legal fees and costs incurred in this matter.

E.  Award an incentive fee to this Objector for her role in improving the Settlement, if applicable.

Dated: December 6, 2010            LAW OFFICES OF DARRELL PALMER


By: __/s/ Darrell Palmer_____
Darrell Palmer, Attorney for Objector Sonia Newman

19

06-CV-2705-CAB
OBJECTION OF SONIA NEWMAN TO MOTION FOR APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS,
AND APPLICATION FOR ATTORNEYS' FEES

1

2

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2010, I electronically filed the foregoing OBJECTION OF SONIA NEWMAN TO MOTION FOR APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS, AND APPLICATION FOR ATTORNEY FEES  with the Clerk of the Court of the United States District Court for the Southern District of California by using the USDC CM/ECF system.

I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the USDC CM/ECF system, to wit:

3

4

5

6

7

8

9

Leslie Hurst                                              Sabrina Strong
Blood Hurst & O'Reardon, LLP                  O'Melveny & Myers LLP
lhurst@bholaw.com                              strong@omm.com
Class Counsel                                    Counsel for Defendant

10

11

12

        /s/ Darrell Palmer
Darrell Palmer
Attorney for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

06-CV-2705-CAB
OBJECTION OF SONIA NEWMAN TO MOTION FOR APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS,
AND APPLICATION FOR ATTORNEYS' FEES