

**NUNC PRO TUNC**
DEC -3 2010

December 1, 2010

Leslie Hurst
Blood Hurst & O'Reardon, LLP
600 B Street, Suite 1550
San Diego, CA 92101

Clerk of Court
U.S. District Court
Southern District of California
880 Front Street, Suite 4290
San Diego, CA 92101-8900

Sabrina Strong
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071-2899

Re: <u>Shawndee Hartless, on Behalf of Herself and All Others Similarly Situated and the General Public vs. Clorox Company, No. 06-CV-02705-CAB in the United States District Court for the Southern District of California</u>

Dear Sirs and Madams:

    Class member Sam P. Cannata ("Objector") hereby objects to the proposed settlement of the above-entitled class action for the following reasons:

    1.    This settlement consists of up to $8 million in cash plus injunctive relief consisting primarily of Clorox ceasing to use the language "Does not harm plumbing" or substantially similar language that reasonably conveys the same meaning on future Clorox Automatic Toilet Bowl Cleaner ("CATBC"). The terms are as follows:

    a. Clorox will pay $7 million in cash into a Claim Fund in compensation for valid claims for property damage resulting from the purchase and/or use of CATBC, and
    b. Up to an additional $1 million into the Claim Fund if the amounts to be paid from the Claim Fund exceed $7 million as needed to pay Class Members' Approved Claims, and
    c. $750,000.00 in costs reasonably and actually incurred by the Claims Administrator in connection with providing notice to and administering claims submitted by the Class in the settlement.

    In the Notice to Class Members, class counsel advises that it intends to seek legal fees and expenses in addition to and apart from the settlement fund in the following amounts:

    a. Clorox agrees to pay attorney fees and expenses awarded by the Court up to $2.25 million, and

1

   b. Clorox will pay costs incurred by the Claims Administrator in excess of $750,000.00.

  2. <u>Attorneys' fees are excessive</u>. Class Counsel justifies their Attorneys' fees using the percentage and lodestar methods. <u>Plaintiff's Application for Attorneys' Fees and Costs and Plaintiff Service Awards ¶ ¶ VI</u>. Class Counsel indicates in the Notice and in the Settlement Agreement that it will request up to $2.25 million in fees and expenses. Under the percentage method that is entirely too much compensation considering the relationship of the requested attorneys' fee to the amount of benefit being paid to the Class. A simple review of the numbers involved in this case clearly indicates that the requested fee is excessive. Even if 100% of the Claim Fund is claimed by the Class (a highly unlikely eventuality), Class Counsel is asking for a fee representing 31% of the value of the $8 million Claim Fund or 36% of the total $7 million Claim Fund, after removing the costs incurred by the Claims Administrator incurred ($750,000.00) from the calculation. If the claims rate in this case holds true to the historical average noted by numerous Federal courts, the amount paid to members of the class will be much less than either $8 million or $7 million in cash, and yield response rates of 10% or less. There is nothing in the facts of this case that would indicate that the claims rate is going to be significantly higher than the historical average. This means that the amount of cash that will be claimed and paid to class members is certainly unknown at this time, and may well be much less than $7 million; indeed, the amount claimed may be **less than** the $2.25 million in attorneys' fees to be requested. Such a result would be neither fair nor reasonable and the total fee awarded should not exceed 25% of the cash portion of the settlement.

  Furthermore, in addition, the $8 million in potential cash is clearly not a "Fund" for the following reasons: (1) the last $1 million of said "fund" will never be paid unless claims exceed $7 million (which in all likelihood they will not) and (2) as to the $7 million "fund", no monies will ever be paid except those that are actually claimed through written claim forms received from class members. As to this "fund", any unclaimed amount of the **cash** will revert to a charity agreed upon by the Parties. The unclaimed amount of cash should be paid to the class members.

  If it were truly a cash fund, the entire $7 or $8 million would be distributed among the class members who filed claims.

  Therefore, a significant portion, if not all of Class Counsel's fees, should be deferred until such time as the Court has received reports indicating the amount of monetary relief that has actually been delivered to the Class.

  Likewise, the lodestar method suggests that Class Counsel's valuation of attorneys' fees is improper. Class Counsel in this case purports to have expended 5,995.4 hours in this case and seeks $2.25 million in attorneys' fees. This amounts to a lodestar of $375.29 an hourly fee which has little evidentiary support.

  Hence, the percentage and lodestar methods do not support Class Counsel's request for attorneys' fees and the Court should reject the settlement.

2

3.      <u>The payment of attorneys' fees should be delayed</u>. Class Counsel purports to request fees that are reasonable in light of the value of the settlement to Class Members. However, the Court cannot ascertain the true value of the benefit to the class until it knows exactly how much of the Fund is paid out to Class Members. Although $8.0 million in cash are to be distributed, it is unlikely that anywhere near that amount will actually go to Class Members. In fact, it is likely that a significant portion of the Fund will actually go to a *cy pres* distribution. The Settlement Agreement provides "if the qualifying claims do not reach $7.0 million then the difference between $7.0 million and the amount distributed to Class Members shall be treated as a *cy pres* Fund. <u>Stipulation of Settlement ¶ ¶III.B.2(d)</u>. Therefore, at this point in time the Court does not know the exact amount that will be paid to the Class Members. Without this information, the Court has no basis for determining what the relief is worth; without knowing the value of the settlement to Class Members, the Court cannot make an independent finding about whether or not the requested fees are fair.

This Honorable Court should wait to award attorneys' fees until such time as it has had a chance to review the claims actually made to assure it that the attorneys' fees are reasonably related to the actual benefit received by the Class. This would be in keeping several cases in other jurisdictions and with the Federal Judicial Center's "Pocket Guide" for managing class action litigation. *"Managing Class Action Litigation: A Pocket Guide for Judges, 2nd Ed,* Barabara J. Rothstein & Thomas E. Willging. Federal Judicial Center, 2009 at 28 argues that the best way to determine appropriate attorneys' fees is to wait until after the redemption period has ended and the value of the benefits to the Class can be established by calculating class members' **actual use.** *Id.* Many courts are following the Federal Judicial Center guidelines to accurately value claims-made settlements when awarding attorney's fees. They do not simply use the maximum potential amount of claims, but wait for the claims to come in and calculate the fee based upon the amount actually paid out to the class members.
In the instant case, cash is to be distributed, and this is, in effect, a claims-made settlement. Therefore, the Court should await a report detailing exactly the amount of monetary benefit received by the Class.

4.      <u>Cy Pres Contributions</u>. The way that the Settlement Agreement is structured, it is likely that the majority of the benefit will go to as yet unspecified IRC Section 501(c)(3) charitable organization which will be mutually agreed between Clorox and Class Counsel. What charitable organizations will be chosen, and how will that be determined? The Stipulation of Settlement is silent on this issue. While the concept of making the *cy pres* donation is laudable, the actual mechanism described in the Settlement Agreement leaves many open questions.

In addition, unclaimed funds should be paid to class members who made claims, not third parties. The American Law Institute ("ALI") recommends that unclaimed funds be paid to claimants, not *cy pres:*

§ 3.07 Cy Pres Settlements

3

> (b) If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.

Principles of the Law of Aggregate Litigation § 3.07 (b), p. 220 (Proposed Final Draft 2009). Of course, in this case the extra money could easily be given to claimants for no additional costs by simply making the initial payments to claimants large enough so as to exhaust the fund. The ALI further reasons:

> [T]his Section generally favors cy pres awards only when direct distribution to class members is not feasible – either because class members cannot be reasonable identified or because distribution would involve such small amounts that, because of the administrative costs involve; such distributions would not be economically viable.

*Id.* cmt. (b), p. 221. Here it would clearly be economically feasible to make the distribution to claimants and they are easily identified – they made a claim. Even if giving this money to claimants would over compensate them (which it would not), the ALI draft finds that that would be preferable to giving the money to third parties:

> [A]ssuming that further distributions to the previously identified class members would be economically viable, that approach is preferable to cy pres distributions. This Section rejects the position urged by a few commentators that a cy pres remedy is preferable to further distributions to class members. Those commentators reason that further direct distributions would constitute a "windfall" to those class members. ... [T]his Section takes the view that in most circumstances distributions to class members better approximate the goals of the substantive laws than distributions to third parties that were not directly injured by the defendant's conduct.

*Id.* p. 222.

    5.    <u>"Clear Sailing" Provision</u>. Clorox agreed "not to oppose an application for an award of attorneys' fees and expenses not to exceed a total of $2,250,000" or approximately one-third of the Claims Fund. <u>Stipulation of Settlement, ¶¶VIII.A.2.</u> However, this agreement should not be afforded any weight by this Court, and is clearly not binding on this Court. "[A]ny award of attorney's fees to class counsel must be reasonable in comparison to the benefits conferred on the class through counsel's efforts." *Scardelletti v. DeBarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002) (citations omitted); see also *Brown v. Phillips Petroleum, Co.*, 838 F.2d 451, 453 (10th Cir. 1988).

Class Counsel has not shown that the requested fee is reasonable or justified when compared to the benefits conferred on the Class through counsel's efforts.
"Clear sailing provisions ... represent *prima facie* evidence of simultaneous negotiations of merit relief and fees, which is a practice fraught with serious ethical concerns for lawyers representing the class. Both courts and commentators have expressed apprehension that a plaintiff's counsel may be accepting a lower settlement for the class in exchange for a generous and non-adversarial treatment of fees." William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 Tul.L.Rev. 813, 815 (2003) (advocating *per se* ban on clear sailing clauses). The Fifth Circuit has stated that "a district court is not bound by the agreement of the parties as to the amount of attorneys' fees. In fixing the amount of attorneys' fees the court must, of course, take all [appropriate] criteria into account, including the difficulty of the case and the uncertainty of recovery. [The Court] is not, however, merely to ratify a pre-arranged compact." *Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir. 1980). Therefore, the Court should disregard the "clear sailing" provision and do its own analysis of the Fee Request (once it is submitted.)

6. Objectors respectfully adopt and incorporate into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections. Objectors also reserve the right to supplement these Objections with other and fuller objections.

7. The Class Members have a legally protectable interest in this litigation. That interest will be impacted by the proposed settlement agreement, particularly the legal fees that are proposed to be paid.

9. These Objections, presented to the Court as a matter of right, are properly and timely filed by the Objector. All of the legally required prerequisites material to these objections have been met.

10. Attached hereto is the Claim Form of Sam P. Cannata.

Respectfully submitted,

Sam P. Cannata, Pro Se
14944 Hillbrook Drive
Cleveland, Ohio 44022
(216) 214-0796

5

**MUST BE FAXED, SUBMITTED ONLINE OR POSTMARKED ON OR BEFORE JANUARY 28, 2011**

CATBC Settlement
c/o The Garden City Group, Inc.
P.O. Box 9487
Dublin, OH 43017-4587

CLX





Claim No: 7241301

Control No: 4580505188

SAM P. CANNATA
14944 HILLBROOK DRIVE
CLEVELAND, OH 44022

**REQUIRED ADDRESS INFORMATION OR CORRECTIONS**
If the pre-printed address to the left is incorrect or out of date, OR if there is no pre-printed data to the left, **YOU MUST** provide your current name and address here:

Name:
Address:
City/State/Zip:

## Clorox Automatic Toilet Bowl Cleaner with Bleach
### CLAIM FORM 1

You can also submit online at www.catbcsettlement.com.

Use this Claim Form 1 if you claim refunds of purchase price and/or property damage totaling $30 or less. If you want to claim refunds of purchase price and/or property damage over $30, you must use Claim Form 2 available at www.catbcsettlement.com or 1-888-262-1556. This Claim Form is only for damage allegedly caused by Clorox Automatic Toilet Bowl Cleaner with Bleach. If you allege damage caused by any other Clorox product, or any other toilet bowl cleaner manufactured by another company (e.g., 2000 Flushes, Vanish Drop-ins Bleach Tablets, or Ty-D-Bol Cleaner), do not fill out this form. You may submit only one Claim Form, and two people cannot submit Claim Forms for the same alleged damage. **All Claim Forms must be postmarked, faxed, or submitted online on or before January 28, 2011.** If mailing or faxing, please return this form to:

CATBC Settlement
c/o The Garden City Group, Inc.
P.O. Box 9487
Dublin, OH 43017-4587
FAX 1-614-553-1552

### CLASS MEMBER INFORMATION

NAME: Sam P. Cannata        TELEPHONE OR EMAIL: (216) 214-0796
ADDRESS: 14944 Hillbrook Dr.
CITY: Cleveland    STATE: OH    ZIP CODE: 44022

AMOUNT CLAIMED FOR ALLEGED PROPERTY DAMAGE (INCLUDING THE PURCHASE PRICE OF CATBC) RESULTING FROM THE PURCHASE AND/OR USE OF CATBC IN THE UNITED STATES INCURRED AT ANY TIME BETWEEN DECEMBER 13, 2002 AND SEPTEMBER 15, 2010: $25.00

### AFFIRMATION

I UNDERSTAND THAT THE DECISION OF THE CLAIM ADMINISTRATOR IS FINAL AND BINDING ON ME AND ON CLOROX. I SWEAR UNDER PENALTY OF PERJURY THAT THE INFORMATION ON THIS CLAIM FORM IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

SIGNATURE: [signed]      DATE: 12/1/10

**CLAIM FORMS MUST BE RETURNED BY JANUARY 28, 2011.**
QUESTIONS? VISIT WWW.CATBCSETTLEMENT.COM OR CALL 1-888-262-1556.

Sam P. Cannata
19444 Hillbrook Dr.
Cleveland, Ohio 44022

CATBC Settlement
c/o The Garden City Group, Inc
P.O. Box 9487
Dublin, OH 43017-4587

