UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWNDEE HARTLESS, on Behalf of Herself, All Others Similarly Situated, and the General Public,<br><br>Plaintiff,<br><br>v.<br><br>CLOROX COMPANY,<br><br>Defendant. | Civil No.    06cv2705-CAB<br><br>**ORDER GRANTING: (1) CLASS CERTIFICATION; (2) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (3) MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE PAYMENT** |

Currently before the Court are the parties' Joint Motion for Final Approval of Class Action Settlement and Certification of Settlement Class (Doc. No. 81) and plaintiff's Application for Attorney Fees and Costs and Plaintiff Service Awards (Doc. No. 88) filed on November 22, 2010 and heard on December 29, 2010 at 1:30 p.m. before the Honorable Cathy Ann Bencivengo.  Timothy G. Blood, Patricia Syverson, Elaine Ryan and Leslie Hurst appeared for plaintiff.  Sabrina Strong, Adam Levine, and Katherine Edsall appeared for defendant.  Janine Menhennet appeared for third party objector Sonia Newman.  The Court has considered the documents filed by the respective parties in connection with the proposed class settlement, the presentations of counsel, as well as the comments and materials received from the parties interested in the settlement, and for the reasons set forth below, the Court **GRANTS** the motions.

# I. BACKGROUND

**A.     Procedural Background**

Plaintiff filed this suit on December 13, 2006 alleging violations of the Consumer Legal Remedies Act, California Civil Code section 1750 et seq.;  California's Unfair Competition Law, California Business & Professions Code section 17200 et seq.; and for breach of the implied warranty of merchantability.  (Docket No. 1.)  Defendant filed a Motion to Dismiss on March 19, 2007.  (Doc. No. 6.)  The Motion to Dismiss was granted in part and denied in part on November 2, 2007.  (Doc. No. 11.) Plaintiff then filed a First Amended Complaint for violation of California's Unfair Competition Law and the Consumer Legal Remedies Act on November 28, 2007.  (Docket No. 16.) Plaintiff alleges that chemicals from the Clorox Automatic Toilet Bowl Cleaner with Bleach ("CATBC") tablets cause damage to the flush mechanism's flapper and the statement on the CATBC label that the tablet "Does not harm plumbing" is false, misleading and likely to deceive the public.  (Docket No. 1 at pp. 2-6.)

On December 17, 2007, Clorox answered the First Amended Complaint.  (Doc. No. 17.)  The Court then held an Early Neutral Evaluation Conference on February 7, 2008.  (Doc. No. 24.) Defendant filed a motion to stay pending resolution of an appeal in a related case on March 24, 2008 which was denied on November 6, 2008.  (Doc. No. 25.)  The parties received discovery and pre-trial deadlines on December 5, 2008.  (Doc. No. 47.)  The parties then began to engage in extensive discovery.  (*See* Doc. Nos. 50 and 55.)  On October 27, 2009, the parties participated in mediation before the Honorable Gary L. Taylor (Ret.) and reached a settlement in principle.  (*See* Doc. No. 63.) The parties continued to finalize the settlement and ultimately filed a stipulation of settlement and a joint motion for preliminary approval of the settlement on May 21, 2010.  (Doc. Nos. 77 and 78.)

**B.     The Proposed Settlement**

Pursuant to the settlement, the class members include any person or entity in the United States who purchased, used, or suffered any property damage from the use of Clorox Automatic Toilet Bowl Cleaner ("CATBC") from December 13, 2002 to September 15, 2010.  (Doc. No. 77 at p. 2.)  Clorox agreed to stop using the language "Does not harm plumbing" or substantially similar language on future CATBC labels, packages, promotional materials and/or advertisement.  (Doc. No. 77 at p. 8.)  Clorox also agreed to create a settlement fund of at least $7 million (and up to $8 million) to provide payment to

class members for reimbursement of the purchase price of CATBC or other property damage attributable to the use of CATBC.[1]  (*Id.* at p. 8.)

The settlement requires Clorox to pay out of the claim fund as follows: 1) $750,000 as payment of costs incurred by Claim Administrator (fees in excess of $750,000 will be paid separately by Clorox); 2) distributions to class members who submit approved claims and for class representative service awards; 3) expenses associated with maintaining the class fund (e.g. taxes); 4) distribution of remainder to non-profit approved by court and parties.  If the claims exceed $7 million, Clorox will fund an additional $1 million to pay class member claims.  If the claims exceed $8 million, the approved claims will be reduced pro rata.   (Doc. No. 77 at pp. 8-9.)

Class members must fill out and return a claim form to obtain a cash payment.  For individuals seeking $30 or less in damage, they only need to return a form providing their name and address, the amount of the claim, and an affirmation that they purchased CATBC during the class period.  (Doc. No. 77, Ex. A.)  For class members seeking between $30 and $175 in property damage, they must complete a more detailed claim form that includes the nature of the damage, affirm that the damage occurred during or after use of CATBC, and provide documentation if available.  (*Id.*)  For class members seeking more than $175 in damages, they must provide documentation of the damage sustained (e.g. repair bills, cancelled check or statement from a plumber, contractor or witness).  Pursuant to the settlement, all class members will receive a cash payment for 100 percent of the damage claimed.  (*Id.* at pp. 8-10.)  The amount remaining in the claim fund will be paid through *cy pres* distributions to appropriate organizations.  (*Id.* at p. 9.)

Clorox agreed to not oppose Class Counsel's request for an award of costs and attorneys' fees not to exceed $2,250,000.  (*Id.* at p. 16.)  Class Counsel agreed to allocate and distribute the award amongst themselves.  (*Id.*)  Clorox also agreed to exercise reasonable means to inform class members of the settlement.  (*Id.* at p. 13.)  Beginning 105 days before the final approval hearing, Clorox caused the Publication Notice to be published and an opportunity to be excluded from the settlement class.  (*Id.* at 13-14.)  Class members had 45 days to file objections, notices of intent to attend hearing, or exclusion requests.  (*Id.*)

---

[1]Administration costs of up to $750,000 also are paid out of this fund.  (*Id.*)

06cv2705

1   In exchange for the above, each final settlement class member will release Clorox from all

2   claims arising out of the Clorox Lawsuits that were or reasonably could have been asserted in the Clorox

3   Lawsuits by the releasing parties.  (Doc. No. 77 at p. 10-11.)  Additionally, Co-Lead Counsel in related

4   Case No. 37-2009-93810-CU-BT-CTL in San Diego Superior Court and plaintiff's counsel in related

5   Case No. 09cv138 in the Southern District of California agreed to dismiss those actions upon final

6   approval and time for appeal in this matter.  (Doc. No. 77 at p. 14-15.)

7   **C.      Preliminary Approval of the Settlement**

8           On August 13, 2010, the Court preliminarily certified the class for settlement purposes,

9   appointed class counsel, granted preliminary approval of the settlement, and ordered Plaintiff to

10  disseminate notice of the settlement to class members.  (Doc. No. 81.)  From September 15, 2010 to

11  October 14, 2010, over 155 million impressions of the Publication Notice appeared on internet banner

12  advertising on several websites.  (Doc. No. 86 at p. 10.)  The Publication Notice also ran in 1,200

13  newspapers throughout the United States with a circulation of over 64 million and 3 different magazines

14  with a circulation of over 4 million from September 19, 2010 to October 12, 2010.  (*Id.* at pp. 12-13.)

15  The Publication Notice contained a general description of the lawsuit and settlement relief, a general

16  description of class members' legal rights, and the settlement website and toll free number for additional

17  forms and information.  (Doc. No. 81-1 at p. 6).  The Publication Notice also included the claim form

18  for individuals claiming less than $30 in damages.  (*Id.*; Doc. No. 86 at pp.12-13.)

19          A more detailed class notice was available on the website or via mail to callers who requested it.

20  That notice provided more additional information about the lawsuits, settlement benefits, release and

21  exclusion.  As of November 14, 2010, the official website had received 113,181 visits and the toll-free

22  telephone line had received 1,733 calls.  (Doc. No. 86 at p. 14; Doc. No. 90 at p. 2.)

23          The class notice was mailed to counsel for plaintiff in any related litigation and to individuals

24  who contacted Clorox concerning CATBC during the class period.  Approximately 9,800 notices were

25  mailed to such individuals on September 29, 2010 and as of November 14, 2010, all but 357 of any

26  undeliverable notices were resent.  (Doc. No. 90 at pp. 2-3.)  Lastly, notice of the settlement was sent to

27  the Attorney General of the United States and the attorneys general of all 50 states.  (Doc. No. 90 at

28  p.2.)  No attorney general has requested further information regarding the action.  (Doc. No. 91-2 at p.

6.)  Ten class members have requested exclusion (Doc. No. 104 at p. 1) and three class members have objected to the class settlement (Doc. Nos. 98, 100 and 102).

## II.  DISCUSSION

A class action in federal court on diversity grounds must comply with Federal Rule of Civil Procedure 23.[2]  *Shady Grove Orthopedic Assocs. v. Allstate*, - - - U.S. - - -, 130 S. Ct. 1431, 1437 (2010).  In approving a class action settlement, a district court must ensure fairness to all members of the class presented for certification.  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Courts first determine whether a class exists and then consider whether the "proposed settlement is fundamentally fair, adequate and reasonable" as a whole.  FED. R. CIV. PROC. 23(e)(2); *Staton*, 327 F.3d at 952 (citations omitted).  Thus, the Court now turns to the issue of class certification, followed by the fairness of the settlement agreement, and finally the request for attorneys' fees and class representative service payments.

**A.     Class Certification**

"The dominant concern of Rule 23(a) and (b) - that a proposed class have sufficient unity so that absentees can fairly be bound by class representatives' decisions - persists when settlement, rather than trial, is proposed."  *Amchem Products, Inc. v. Windor*, 521 U.S. 591, 593 (1997).  Rule 23(a) establishes four prerequisites for class certification, which are:  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  Once these requirements are met, the purported class must meet the requirements of  Rule 23(b)(3).

**1.       Rule 23(a)(1) - Numerosity**

Rule 23(a)(1) requires the class be so numerous that "joinder of all members is impracticable." Here, the objectors do not contest numerosity.  The proposed class is a nationwide class with potentially millions of class members residing in 50 states.  Thus, numerosity is met.

---

[2]  Objector Newman argues "[a]pplying California law is appropriate in this matter since the complaint" only asserts state causes of action.  (Doc. No. 98 at p. 1.)  While a federal court sitting in diversity applies the substantive law of the state, it applies federal procedural law.  In fact, the U.S. Supreme Court recently held that Rule 23 is valid under the Rules Enabling Act as it merely enables federal courts to adjudicate multiple claims at once but leaves parties' legal rights and duties intact. *Shady Grove*, - - - U.S. - - -, 130 S. Ct. at 1437-39, 1442-43 (finding Rule 23 "empowers a federal court to certify a class in every case meeting its criteria").  Whether to award attorneys' fees and the calculation of those fees, however, is substantive and governed by California law as discussed *infra* section C.  *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

06cv2705

1       **2.      Rule 23(a)(2) - Commonality**

2       Rule 23(a)(2) requires "questions of fact or law common to the class."  Commonality is

3   construed permissively and does not require that all questions of fact and law be in common.  *Hanlon v.*

4   *Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  "The existence of shared legal issues with

5   divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate

6   legal remedies within the class."  *Id.* at 1019.  The focus of this action - whether CATBC harms

7   plumbing and was mislabeled - is common to all class members.  (Doc. No. 16 at p. 8.)  Thus, the

8   proposed class shares sufficient commonality.

9       **3.      Rule 23(a)(3) - Typicality**

10      Typicality is satisfied if "the claims or defenses of the representative parties are typical of the

11  claims or defenses of the class."  FED. R. CIV. P. 23(a)(3).  "Under the rules permissive standards,

12  representative claims are 'typical' if they are reasonably co-extensive with those of absent class

13  members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  Plaintiff and the class

14  members were all exposed to the same product and the same alleged misrepresentations.  The focus of

15  the proposed class is to correct the misrepresentations and/or receive adequate compensatory damages

16  due to the mislabeling.  Thus, typicality is met.

17      **4.      Rule 23(a)(4) - Adequacy of Representation**

18      Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

19  interests of the class."  This factor addressed whether:  (1) the representative plaintiffs have conflicts of

20  interest with the proposed class; and (2) the plaintiffs are represented by qualified and competent

21  counsel.  *Hanlon*, 150 F.3d at 1020.

22      As to the first prong, the Court is not aware of any conflict of interest between Plaintiff Hartless

23  and the proposed class members.  Her interests in proving Clorox's alleged misrepresentation aligns

24  with those of other class members.  Objector Newman argues that "there is an intra-class conflict of

25  interest that renders Class Counsel, as well as the class representatives, inadequate, because it fails to

26  differentiate between residents of various states. . . ."  (Doc. No. 98 at p. 4.)  This class is different than

27  the class in *Oritz v. Fibreboard Corp.*, 527 U.S. 815 (1999) referenced by objector Newman.  In that

28  case, the class "divided between holders of present and future claims (some of the latter involving no

1   physical injury and attributable to claimants not yet born)" and persons with asbestos exposure before

2   and after the expiration of the defendant's insurance policy with an insurer providing the bulk of the

3   settlement funds.  Therefore, the class required division to eliminate conflicting interests of counsel.

4          This case does not involve contested insurance funds or present and future claimants.  Each

5   potential class member has the same issue:  an allegedly false representation on CATBC packaging and

6   damages in the form of the purchase price or consequent property damage.  The differences in severity

7   of personal injury present in *Oritz* and similar cases are not present here.  Moreover, the differences in

8   state remedies and damages are not sufficiently substantial to cause a conflict and warrant the creation

9   of subclasses.  Thus, an improper conflict of interest does not exist that would deny absent class

10  members adequate representation.  *See Hanlon*, 150 F.3d at 1021.

11         As to the second prong, the objectors do not challenge the competency of class counsel.  The

12  record shows that Class Counsel has significant experience litigating consumer fraud class actions in

13  federal and state courts.  (*See, e.g.*, Doc. No. 82 at pp. 1-2, ¶¶ 4-5 and Ex. 1; Doc. No. 81-3 at p. 2, ¶¶ 2-

14  5 and Ex. A.)  Thus, plaintiff is are represented by qualified and competent counsel and the Court finds

15  adequacy met.

16         **5.      Rule 23(b)(3) - Predominance and Superiority**

17         Rule 23(b)(3) requires that a court find "questions of law or fact common to class members

18  predominate over any questions affecting only individual members, and that a class action is superior to

19  other available methods for fairly and efficiently adjudicating the controversy."  The following factors

20  are relevant to that finding:  (1) class members' interests in individually prosecuting or defending

21  separate actions; (2) the extent and nature of litigation already commenced by or against class members;

22  (3) the desirability of concentrating the litigation in a certain forum; and (4) the difficulties in managing

23  the class action.  FED. R. CIV. PROC. 23(b)(3).  "Settlement benefits cannot form part of a Rule 23(b)(3)

24  analysis, the issue must rest on 'legal or factual questions that qualify each class member's case as a

25  genuine controversy, questions that preexist settlement."  *Hanlon*, 150 F.3d at 1022 (citing *Amchem*,

26  521 U.S. at 623).  However, settlement is relevant to a class certification.  *Id.* at 619.  Moreover, a

27  district court does not need to determine whether the class action would be manageable under Rule

28  23(b)(3)(D) as the proposal is that there be no trial.  *Amchem*, 521 U.S. at 620.

1    Objectors argue that predominance fails because other state's consumer protection laws differ

2    with some providing greater relief to class members.  (*See* Doc. No. 98 at p. 5).  Additionally, objectors

3    argue that issues of reliance, proof, and limitations periods prevent a finding of predominance.  *(Id.* at

4    pp. 5-10.)  Objector Newman relies heavily on a case from the Southern District of New York.  *(Id.)*

5    Predominance tests whether proposed classes are cohesive enough to warrant representative

6    adjudication.  *Amchem*, 521 U.S. at 623.  As explained by the advisory committee, predominance may

7    be found in cases of fraud perpetrated on multiple persons by a similar representation even though

8    separate damages were suffered by the class members.  FED. R. CIV. PROC. 23, advisory committee notes

9    (1966).  In contrast, the advisory committee noted that cases in which there are material differences in

10   the misrepresentations or various degrees of reliance by the persons to whom they are addressed may

11   lack predominance and be unsuitable class actions.  *Id.*  Likewise, the Ninth Circuit has held that

12   variations in state law do not preclude a Rule 23(b)(3) action.  *Hanlon*, 150 F.3d at 1022.  "Although

13   some class members may possess slightly differing remedies based on state statute or common law, the

14   actions asserted by the class representatives are not sufficiently anomalous to deny class certification. . .

15   . [T]o the extent distinct remedies exist, they are local variants of a generally homogenous collection of

16   causes. . . ."  Therefore, the idiosyncratic differences between state consumer protection laws are not

17   sufficiently substantive to predominate over shared claims."  *Id.*

18   Here, sufficient common issues exist to warrant a class action.  For instance, all class members

19   were exposed to the same alleged misrepresentation, all class members need to show CATBC harms

20   plumbing when used as directed, and issues regarding Clorox's knowledge of harm or inaccuracies in its

21   representations are common to all.  Moreover, this case is distinguishable from other consumer fraud

22   cases.  In many cases, like those cited by Objector Newman, reliance is particularly relevant due to the

23   facts of the case.  Here, each class member most likely purchased CATBC believing it does not harm

24   plumbing.  Thus, the degree of reliance by the class members is the same.  Additionally, the settlement

25   does not require the court to make fine distinctions between state-law theories of relief as it does not

26   require class members to show reliance or causation.

27   The superiority component of Rule(23)(b)(3) "requires determination of whether the objectives

28   of the particular class action procedure will be achieved in the particular case."  *Hanlon*, 150 F.3d at

1023.  In this case, the alternative is individual lawsuits for injunctive relief or a small amount of

monetary damages.  Most people would not bring an individual claim as the cost of litigation would

likely exceed the modest recovery.  Among other costs, individuals would be required to provide expert

testimony regarding whether CATBC actually harmed plumbing.  Moreover, individuals would not have

an incentive to bring an action solely to get Clorox to change its label and packaging, relief that is at the

heart of a misrepresentation case.  Additionally, multiple individual claims could overburden the

judiciary and lead to different orders regarding appropriate labeling and packaging.  Thus, an

examination of the alternatives shows that a class action is the best method of adjudicating this dispute.

Lastly, the factors cited in Rule 23(b)(3) as relevant to these findings weigh in favor of

certification.  As discussed above, the judiciary and class members' have little interest in prosecuting

individual actions.  Individual actions would decrease litigation and settlement leverage, reduce

resources, and would not increase the prospect for recovery.  Individual class members also do not have

an emotional stake in the litigation and did not suffer significant damages.  The litigation already

commenced by class members will be dismissed through this settlement.  Of any forum, California is the

logical venue for concentration of claims as Clorox is headquartered in Oakland, California and its

alleged misrepresentations emanated from California.  (Doc. No. 104 at p. 8.)  Thus, the proposed class

meets the requirements of Rule 23(b)(3).  Therefore, the Court **GRANTS** certification of the class for

the purposes of settlement and overrules the objections to class certification.

**B.      The Settlement**

Pursuant to Rule 23(e), a district court must determine whether a proposed settlement is

"fundamentally fair, adequate and reasonable."  A court considers several factors in making this

determination, including: (1) the strength of the case; (2) the risk, expense, complexity and likely

duration of further litigation and the risk of maintaining class action status throughout the trial; (3) the

stage of the proceedings (investigation, discovery and research completed); (4) the settlement amount;

(5) whether the class has been fairly and adequately represented during settlement negotiations; and (6)

the reaction of the class to the proposed settlement.  *Staton*, 327 F. 3d at 959.  Courts require a higher

standard of fairness when settlement takes place prior to class certification to ensure class counsel and

defendant have not colluded in settling the case.  *Hanlon*, 150 F.3d at 1026.  Ultimately, "[t]he court's

06cv2705

1  intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a

2  lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not

3  the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

4  settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v.*

5  *Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

6        **1.      The Strength of the Case and Risk, Expense, Complexity and Duration of Further**

7                  **Litigation and Maintaining Class Certification**

8        Defendant asserts that it has strong factual and legal defenses to the asserted claims.  (Doc. No.

9  81-2 at pp. 8-9.)  Clorox would argue that CATBC is safe for plumbing when used as directed and that it

10  produced testing documentation to that effect.  (*Id.*)  Additionally, Clorox would have contended that

11  there are other causes for the harm alleged by plaintiff.  (*Id.*)  In light of these defenses and because the

12  outcome of litigation is never certain, the Court finds that this factor weighs in favor of the settlement.

13        The parties recognize that the risk, expense and duration of further litigation support the

14  settlement.  (Doc. No. 81-1 at pp. 11-12 and Doc. No. 81-2 at pp. 8-9.)  Defendant asserts that plaintiff

15  would struggle to show causation and reliance with her own claim and to maintain class action

16  certification throughout the litigation.  (Doc. No. 81-2 at p. 9.)  Plaintiff concedes that defendant would

17  vigorously contest each issue and competently oppose the lawsuit.  (Doc. No. 82 at p. 2.)  Defendant

18  further asserts that if litigated through trial, the case would be unmanageable as the court would have to

19  engage in individual inquiries for thousands of class members.  (*Id.* at p. 10.)  Additionally, the parties

20  assert that litigating the class action through trial would be time-consuming and expensive as the issues

21  are complex and require expert analysis.  (Doc. No. 81-1 at pp. 11-12.)

22        The Court agrees that the risks, expenses, complexity and duration of further litigation are

23  significant.  Plaintiff faced substantial risk in establishing liability, causation and damages.  The parties

24  would have continued with expert discovery and motion practice had the litigation continued.  Notably,

25  this case has been pending since 2006 and discovery and motion practice could have further delayed any

26  recovery for the class members.  Likewise, the expense of this further litigation would be significant.

27  Considering these risks, expenses and delays, an immediate and certain recovery for class members,

28  / / /

1   including full relief for property damage or the reimbursement of the cost of the product favors

2   settlement of this action.

### 2.      The Stage of the Proceedings

4          The parties have engaged in substantial investigation and discovery regarding the issues in this

5   case and did not discuss settlement until three years into the litigation and following significant

6   discovery.  (Doc. No. 81-1 at p. 9.)  Prior to settlement negotiations, Clorox produced 42,400 pages of

7   documents in response to written discovery which Plaintiff reviewed.  Clorox also responded to

8   interrogatories and requests for admissions.  (Doc. No. 82 at pp. 3-4.)  Plaintiff's counsel retained

9   consultants, conducted laboratory testing of the product, obtained documents from industry officials,

10  interviewed industry consultants and representatives of the industry committees formed to investigate

11  the allegedly damaging effects of chlorinated in-tank cleaners,  conducted an informal interview with a

12  former Clorox employee, and engaged and worked with a consultant to review and analyze testing

13  documents produced by Clorox.  (Doc. No. 81-2 at pp. 9-10.)  Based on the stage of the proceedings and

14  the discovery completed, the Court is satisfied that the parties are familiar with the legal bases for the

15  claims and defenses, and capable of balancing the risks of continued litigation and the benefits of the

16  proposed settlement.  Thus, this factor weighs in favor of settlement.

### 3.      Amount of the Settlement

18         The proposed settlement provides for cessation of the language "does not harm plumbing" on

19  future CATBC labels, packages, promotional and advertising materials, and for up to 100 percent

20  recovery of the property damage through a claims process.  (Doc. No. 77 at pp. 7-10.)  Clorox agrees to

21  provide at least $7 million and up to $8 million as a claim fund ($750,000 of that fund for administration

22  expenses).  (*Id.*)  Additionally, Clorox has agreed to pay attorneys' fees and any additional

23  administrative expenses separately.  (*Id.*)  Each class member only needs to submit a claim form with a

24  de minimus showing of damages in order to recover 100 percent of those claimed damages.  This relief

25  is greater than most individuals would have received if they had litigated their own case and relieves the

26  burdens of showing reliance and causation for a modest recovery.   Based on the foregoing, the Court

27  finds the proposed amount of the settlement is fair and reasonable and this factor weighs in favor of

28  settlement.

06cv2705

1    **4.    Experience and Views of Counsel**

2       The recommendations of counsel are given great weight since they are most familiar with the

3    facts of the underlying litigation. *Nat'l Rural Telecommuns. v. DirecTv, Inc.*, 221 F.R.D. 523, 528 (C.D.

4    Cal. 2004).  Class Counsel has extensive experience working on class actions.  (*See* Doc. No. 82 at Ex.

5    1; Doc. No. 84 at Ex. A; Doc. No. 85 at Ex. A; Doc. No. 81-3 at Ex. A; Doc. No. 81-4 at Ex. A; Doc.

6    No. 87 at Ex. A.)  Additionally, the settlement was reached through mediation with Judge Gary Taylor

7    (Retired), an experienced mediator.  (Doc. No. 81-1 at p. 10.)  Counsel negotiated the details of the

8    settlement for several months before a final agreement was reached.  They have weighed the strengths

9    and weaknesses of both their claims and have endorsed the settlement.  (Doc. No. 81-1 at pp. 8-13 and

10   Doc. No. 81-2 at pp. 6-12.)  Their recommendation is entitled to weight and favors settlement.

11   **5.    Reaction of Class to Settlement**

12      The absence of a large number of objections to a proposed class action settlement raises a strong

13   presumption that the terms of the settlement are favorable to the class members.  *Nat'l Rural*

14   *Telecommuns.*, 221 F.R.D. at 529.  As discussed above, the class notice was mailed to counsel for

15   plaintiff in any related litigation, to approximately 9,000 known individuals, to the Attorney General of

16   the United States and state attorneys general, and was posted in various magazines and certain websites

17   estimated to reach 75-83 percent of the class.  (Doc. No. 86 at pp. 11-14; Doc. No. 90 at pp. 2-3.)  No

18   attorney general has requested further information regarding the action.  (Doc. No. 91-2 at p. 6.)  Only

19   ten class members have requested exclusion (Doc. No. 104 at p. 1) and three class members have

20   objected to the class settlement (Doc. Nos. 98, 100 and 102).  Only one objector appeared at the final

21   fairness approval hearing.  Of the potentially thousands of individuals that received the class notice,

22   only three objected indicating the fairness of the settlement.  Accordingly, the reaction of the class

23   weighs in favor of granting final approval.

24   **6.    Absence of Fraud or Collusion**

25      In assessing possible fraud or collusion, courts address whether the agreement is the result of

26   either over misconduct by the negotiators or improper incentives of certain class members at the

27   expense of other class members.  *Staton*, 327 F.3d at 960.  As discussed in the background of this case,

28   counsel for both parties investigated this case and litigated the matter for almost three years prior to

1   entering settlement negotiations.  By that time, counsel was able to assess the strengths and weaknesses

2   of their positions.  An experienced mediator then prompted the settlement which was finalized after

3   months of further adversarial negotiations.  The settlement was accomplished through informed,

4   extensive, and arms-length negotiations.  Thus, the manner in which counsel reached settlement and the

5   lack of any improper incentive to certain class members weighs in favor of settlement.

6           **7.     Objections to Settlement**

7           The objectors' main contention with the settlement amount is the structure for handling

8   unclaimed funds.  Any remaining funds after the claims process will be distributed *cy pres* to charitable

9   organizations approved by the Court and the parties.  (Doc. No. 77 at p. 9.)  The objectors contend:  (1)

10  unclaimed funds should be distributed to class members pro rata; (2) the parties should be required to

11  identify the charitable organization in their motion for final approval; and (3) a *cy pres* distribution is

12  not appropriate until all class members are made whole.  (Doc. No. 102 at pp. 3-4; Doc. No. 100 at p. 1;

13  Doc. No. 98 at pp. 1-2.)

14          *Cy pres* distributions to a charity are appropriate where proof of individual claims is burdensome

15  or distribution of damages costly or where there are unclaimed funds.  *See Six (6) Mexican American*

16  *Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990); *Masters v. Wilhelmina Model*

17  *Agency, Inc.*, 473 F.3d 423, 436 (2nd Cir. 2007).  The issue of *cy pres* distribution, however, is

18  premature until the claims process is concluded and it is determined that there are unclaimed funds.

19  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (finding *cy pres* distribution

20  "becomes ripe only if entire settlement fund is not distributed to class members" and declining to

21  determine propriety of *cy pres* at that time).  Additionally, distribution to claimants on a pro rata basis is

22  inappropriate if it would result in a windfall to those claimants.  *See, e.g.*, *McKinnie v. JP Morgan*

23  *Chase Bank, N.A.*, 678 F.Supp.2d 806, 813 (E.D. Wis. 2009).

24          Regarding Mr. Rivero's objection that all class members should be made whole prior to a *cy pres*

25  distribution, the settlement agreement provides that the claim administrator should pay all claims before

26  any *cy pres* distribution and only unclaimed funds should be distributed to a charitable organization.

27  (Doc. No. 77 at pp. 7-10.)  Thus, Mr. Rivero's objection is overruled.  Objectors Newman and Cannata's

28  argument that the *cy pres* recipients must be identified is without merit.  The Ninth Circuit has found

1  that identification of *cy pres* recipients is not ripe until it is determined there will be unclaimed funds.

2  *See Rodriguez*, 563 F.3d at 966.  Determining the recipient after the claims' process is a logical

3  procedure as the amount of unclaimed funds, if any, may affect the choice of charitable organization.

4  Moreover, if no funds remain, the court and the parties would waste unnecessary time litigating a non-

5  issue.  Lastly, the Court overrules objector Cannata's argument that the claimants should receive any

6  unclaimed funds on a pro rata basis.  In these circumstances, the claimants will recover 100 percent of

7  their claimed losses.  The damages per individual in this case are modest.  Therefore, distributing

8  unclaimed funds, which can be significant in comparison to an individual's property damage, would

9  result in a substantial windfall to those class members.  This type of windfall could encourage

10 individuals to bring class actions that will result in large unclaimed damage funds and create conflicts of

11 interest between named plaintiffs and other class members.

12     For the foregoing reasons, the Court finds that the settlement in this case appears to be "fair,

13 reasonable, and adequate."  FED. R. CIV. PROC. 23(e)(2).  Accordingly, the Court **GRANTS** the joint

14 motion for final approval of the settlement.

15 **C.    Attorneys' Fees and Costs**

16     The stipulation for settlement provides that Co-Lead Counsel will seek and, Clorox will not

17 oppose, an award of up to $2,250,000 in attorneys' fees and expenses.  (Doc. No. 77 at p. 16.)  In

18 diversity actions, the Ninth Circuit applies state law determines the right to fees and the method for

19 calculating fees.  *See Mangold*, 67 F.3d at 1478.  Under California law, the primary method for

20 determining the amount of reasonable attorneys' fees is the lodestar method.  *In re Consumer Privacy*

21 *Cases*, 175 Cal.App.4th 545, 556-57 (2009).  The lodestar is calculated by multiplying the number of

22 hours reasonably expended by counsel by a reasonable hourly rate.  *Id*.  A court may increase or

23 decrease that amount by applying a positive or negative multiplier based on, among other factors, the

24 quality of representation, the novelty and complexity of the issues, the results obtained, and the

25 contingent risk presented.  *Id.*

26     In cases in which the class benefit can be monetized with a reasonable degree of certainty, a

27 percentage of the benefit approach may be used to cross-check the lodestar calculation.  *Id*. at 557-58

28 (citing *Lealao v. Beneficial California, Inc.*, 82 Cal.App.4th 19, 26-27 (2000)).  California courts use

1   this percentage cross-check not only in conventional common fund cases but also in cases in which the

2   defendant creates a common fund for the benefit of the class members and agrees to pay attorneys' fees

3   separately.  *See Lealao*, 82 Cal.App.4th at 35-37.  California courts view the award to the class and the

4   agreement on attorneys' fees a package deal.  *Id.* at 33.

5          Under the percentage method, California has recognized that most fee awards based on either a

6   lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent.

7   *In re Consumer Privacy Cases*, 175 Cal.App.4th 556 n.13.  As to the settlement fund amount:  "If an

8   agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and

9   expenses, both amounts must be disclosed to the class.  Moreover, the sum of the two amounts

10  ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee

11  amount constituting the upper limit on the fees that can be awarded to counsel.  The total fund could be

12  used to measure whether the portion allocated to the class and to attorney fees is reasonable."  *Id.* at

13  553-54 (citing Manual for Complex Litigation (4th ed. 2008) § 21.71, p. 525).[3]   The ultimate goal is to

14  award a reasonable fee.  *Id.*

15         **1.      Objections to Fee Award**

16         Regarding the application for attorneys' fees, objector Rivero contends that the Court should use

17  the percentage method for determining fees and that the class should be given more time to respond to

18  the application.  (Doc. No. 100 at p. 1.)  On the other hand, objector Newman contends that California

19  law governs the attorneys' fee application and requires a lodestar method and states that the objectors do

20  not have sufficient information to analyze the requested attorneys' fees but they "seem[] high."  (Doc.

21  No. 98 at pp. 10-12.)  Additionally, objector Newman contends that the Court must review any fee

22  splitting among the attorneys and that some of the sought costs are unreimburseable.  (Doc. No. 98 at

23  pp. 11-17.)  Objector Cannata argues that the attorneys' fees are unreasonable under both the percentage

24  and lodestar methods contending the percentage should be based on the amount of the fund actually

25  claimed by class members and the lodestar amount has little evidentiary support.  (Doc. No. 102 at pp.

26  2-3.)

27  _____

28         [3]  Under Ninth Circuit law, it is an abuse of discretion to base the percentage recovery on the amount of claimed funds rather than the entire settlement fund.  *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d1026, 1027 (9th Cir. 1997).

1    Objector Cannata also argues that Clorox's agreement not to oppose an application for attorneys' fees

2    up to $2.25 million is not binding on the Court.  (*Id.* at pp. 4-5.)

3           As an initial matter, class members had a sufficient amount of time to respond to the application

4    for attorneys' fees and costs as the application was filed and served within the time requirements of

5    Southern District of California Local Rule 7.1.  The procedure for requesting fees is governed by federal

6    law.  *See Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007).  Additionally, the Court overrules the

7    objections as to the method used to calculate the attorneys' fee award as the Court finds the request for

8    attorneys' fees and expenses is reasonable under both a percentage and lodestar calculation as further

9    explained below.  Even under California law, courts have discretion to cross-check the lodestar

10   calculation with a percentage calculation to ensure that the fee awarded is reasonable.  *See In re*

11   *Consumer Privacy Cases*, 175 Cal.App.4th at 555.  The remaining objections are overruled as discussed

12   below.

13          **2.      Requested Fee Award Under the Lodestar Method**

14          Objector Newman contends that the class has not been provided any information regarding the

15   details of the fee request.[4]  Class counsel, however, indicated on the class notice that it would be filing

16   its motion for attorneys' fees on or around November 22, 2010 and the document would be available via

17   the website or mail by calling the toll-free number.  (Doc. No. 86 at Ex. B.)  Thus, the class members

18   could have obtained a copy of the documents filed in support of the motion for attorneys' fees by calling

19   the toll free number.

20          Plaintiff's counsel has spent 5,995.4 hours on this matter, the related state court action, and the

21   related *Wachowski* federal action.  (Doc. No. 91 at p. 2-3 [hours of Bock and Hatch]; Doc. No. 92 at pp.

22   2-3 [hours of Bonnett, Fairbourn, Friedman & Balint]; (Doc. No. 94 at pp. 2-3 [hours of

23   LakinChapman]); Doc. No. 93 at pp. 1-2 [hours of Waters Kraus and Paul]); Doc. No. 96 at pp. 1-2 and

24   Exs. B-C [hours of Robbins Geller Rudman & Dowd]; Doc. No. 89 at pp. 10-11 [hours of Blood, Hurst

25   & O'Reardon]).  Attorneys from each firm provided declarations attesting to the number of hours

26

27   _____

28         [4]  Moreover, objector Newman's point is not well-taken as her counsel discusses the contents of
     declarations filed in support of the motion for attorneys' fees showing that counsel had access to the
     details of the attorneys' fee request.  (Doc. No. 98 at pp. 11.)

1   worked by each member of the firm and the expenses incurred.  The hourly rates range from $675[5] for

2   an experienced partner's time to $100 per hour for a paralegal's time.  (*See id.*)  Pursuant to the hourly

3   rates indicated in the supporting declarations, the total lodestar is $2,371,773.80.  (*See id.*)

### a.    Reasonable Hourly Rate

5        Objector Newman contends that "concerns arise regarding the hourly rate of some of the

6   professionals," specifically paralegals, and calls for the court to order class counsel to file all time

7   records.  (Doc. No. 98 at p. 11.)  A reasonable hourly rate is determined pursuant to the prevailing

8   market rates in the relevant community.  *See PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1096-97 (using

9   prevailing hourly rate in community for comparable legal services); *see also Sorenson v. Mink*, 239 F.3d

10  1140, 1145 (9th Cir. 2001).  The rates detailed in the declarations of class counsel have been accepted in

11  other class action cases and are comparable to rates approved by other district courts in class action

12  litigation.  *See, e.g.*, *Create-A-Card, Inc. v. Inuit, Inc.*, No. C 07-06452 WHA, 2009 WL 3073920, at *2

13  (N.D. Cal. Sep. 22, 2009) (awarding fees based on hourly rates ranging from $700 to $315 for attorneys

14  and $235 to $150 for paralegals but declining to award requested multiplier); *Lingenfelter v. Astrue*, No.

15  CV 03-00264, 2009 WL 2900286, at *4 (C.D. Cal. Sep. 3, 2009) (finding $600 to be reasonable

16  compensation); *POM Wonderful, LLC v. Purely Juice, Inc.*, No. CV 07-2633, 2008 WL 4351842, at *4

17  (C.D. Cal. Sept. 22, 2008) (finding partner rates of $750 to $475 and associate rates of $425 to $275

18  reasonable).  Moreover, based on the Court's familiarity with the rates charged by other firms in the San

19  Diego area, the Court finds the rates charged by the attorneys and paralegals in this action reasonable.

### b.    Reasonable Number of Hours

21       Five plaintiff firms have expended 5,995.4 hours on this matter, the related state court action,

22  and the related *Wachowski* federal action.  This matter has been pending for over four years and the

23  related federal action has been pending for over a year.  Additionally, plaintiff was required to file a

24  state court action for injunctive relief.  The total hours spent on this case represent approximately one

25  person working on the case for 28 hours per week for a four year time period.  Given the complexity of

26  the case,

28       [5]  There are two hours at $795 for partner John J. Stoia from the Robbins Geller Rudman & Dowd firm.  (*See* Doc. No. 96, Ex. B.)

06cv2705

1    this figure is reasonable.  Two out of the five the law firms performed the majority of the work on these

2    cases.  As this is a nationwide class action against a large company, that arrangement also is reasonable.

3         The Court finds that the nature of the case, a nationwide class action against a large national

4    company, required class counsel to develop a complicated factual record and investigate the claims to

5    provide sufficient evidence to convince a sophisticated defendant of its litigation exposure.  Class

6    counsel engaged consultants, reviewed document productions, and analyzed testing produced by Clorox

7    in preparation for negotiations.  Moreover, the record shows that the settlement negotiations were

8    contentious and lengthy.  Considering the four year duration of this case, the effort expended in motion

9    practice, settlement negotiations, and resolution of the case, and the work completed in the related

10   matters, the Court finds the number of hours reasonable.

11        The Court overrules the objectors' request for complete time records and postponement of the

12   issue until they are received.  Neither California courts or federal courts require counsel to submit

13   complete time records when requesting an attorneys' fee award.  A court may review the summaries

14   provided in declarations by counsel without reviewing contemporaneous time records.  *Lobatz v. U.S.*

15   *West Cellular of Cal., Inc.*, 222 F.3d 1142, 1149 (9th Cir. 2000); *see also Martino v. Denevi*, 182

16   Cal.App.3d 553, 559 (1986) (finding testimony of attorney as to total hours work sufficient without time

17   records).

18                    **c.    Multiplier**

19        The Court can adjust the lodestar either upward or downward under both California and federal

20   law based on the quality of representation, the novelty and complexity of the issues, the results obtained,

21   and the contingent nature of the risk presented.  *Thayer v. Wells Fargo Bank, N.A.*, 92 Cal.App.4th 819,

22   833 (2001); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1402 n.12 (9th Cir. 1992).  The parties are

23   not requesting a positive multiplier but request less than the lodestar fees.  The Court finds no reason to

24   further reduce the attorneys' fees in this case based on the above factors.  The skill and experience of

25   class counsel, combined with the favorable result and work completed to negotiate the result, supports a

26   finding that the requested fees are reasonable. (*See* Doc. Nos. 89, 91-94, and 96.)

27   / / /

28   / / /

3.      **Requested Fees Based on a Percentage**

As discussed above, California courts recognize the use of a percentage method as a cross-check on the fee award in cases easily monetized.  *In re Consumer Privacy Cases*, 175 Cal.App.4th at 557. Clorox agreed to create a settlement fund of at least $7 million for payment of class member claims and up to $750,000 in administration and notice costs.  (Doc. No. 77 at pp. 7-10.)  Any unclaimed portion of the fund will be distributed *cy pres* to a charitable organization for the benefit of absent class members and will not revert to Clorox.  (*Id.*)  Additionally, Clorox has agreed to pay separately all additional notice and claim administration costs, estimated at $500,000, and attorneys' fees and costs of up to $2,250,000.  (*Id.*)

In cases such as this one, where attorneys' fees are paid separately from the claim fund, courts base the fee award on the entire settlement fund as that package is the benefit to the class.  This amount includes notice and administration costs and separately paid attorneys' fees and costs.  *In re Consumer Privacy Cases*, 175 Cal.App.4th at 553-554; *see also*, *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *In re Cylink Sec. Litig.*, 274 F.Supp.2d 1109, 1115 (N.D. Cal. 2003).  Moreover, objector Cannata's argument that the Court should base the attorneys' fee award on the amount actually claimed by class members is without merit as that argument has been rejected and the unclaimed funds do not revert to Clorox but are distributed *cy pres* for the benefit of the class.  *See Williams*, 129 F.3d at 1027 (finding it is an abuse of discretion to base award on amount of claimed fund rather than entire settlement fund).

The entire settlement fund is at least $9.25 as the attorneys' fee award is paid separately from the claim fund.  The request for attorneys' fees in the amount of $2.25 million represents 24 percent of the settlement fund.  This amount is reasonable based on the federal benchmark and California cases.  Thus, the attorneys' fees and costs are reasonable under the percentage method.[6]

/ / /

/ / /

---

[6] Objector Cannata's request that the Court independently review the motion for attorneys' fees due to the "clear sailing" provision is noted.  The Court has reviewed the attorneys' fees requested and not relied strictly on the agreement of the parties.  The Court, however, recognizes that clear sailing agreements are routinely accepted in both the federal and California courts.  *See In re Consumer Privacy Cases*, 175 Cal.App.4th at 553; *see also Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2nd Cir. 1985).

**4.    Requested Costs**

Class counsel seeks $112,021.08 in total costs for the litigations and provides declarations detailing these costs.  (Doc. No. 91 at p. 2-3 [Bock and Hatch]; Doc. No. 92 at pp. 2-3 [ Bonnett, Fairbourn, Friedman & Balint]; (Doc. No. 94 at pp. 2-3 [LakinChapman]); Doc. No. 93 at pp. 1-2 [Waters Kraus and Paul]; Doc. No. 96 at p. 2 and Ex. C [Robbins Geller Rudman & Dowd]; Doc. No. 89 at pp. 10-11 [Blood, Hurst & O'Reardon].)  The majority of these costs are for consultant fees.  (Doc. No. 92 at p. 3 and Doc. No. 96 at Ex. C.)  The consulting fees are reasonable in light of the fact that the focus of this litigation was the effect of the product on plumbing.  Thus, in order to negotiate a settlement in this matter, Class Counsel needed to have evidence regarding the product's potential to damage plumbing.  The balance of the costs are for online legal research, copying, postage, fax and long distance charges, travel expenses, filing fees, mediation fees, and investigation fees.  The only expense claimed by Class Counsel that is not clearly a cost of this litigation alone is the scanning software expense of $1,018.86.  (Doc. No. 92 at p. 3.)  Without further explanation as to how this expense is a cost of this litigation solely, the Court finds this expense unreasonable.  The Court finds all other claimed expenses reasonable in the amount of $111,002.22.

Based on the foregoing, the Court finds the attorneys' fees in the amount of $2,371,773.80 and costs in the amount of $111,002.22 reasonable.  Class Counsel has already decreased its fees and costs to $2,250,000 and the Court **GRANTS** the motion for fees and costs for that amount.

**5.    Allocation of Fees Among Counsel**

Under Federal Rule of Civil Procedure 23(e)(3) "parties seeking approval of a class action settlement must file a statement identifying any agreement made in connection with the proposal."  As explained in the Manual of Complex Litigation, this provision requires disclosure of agreements that may affect the interests of the class members by allocating money that they may have received elsewhere.  (4th ed.)  § 21.631.  As discussed above, the procedure for requesting attorneys' fees is governed by federal law and, therefore, the relevant inquiry is what Rule 23(e)(3) requires, not a California procedural rule.  *See Carnes v. Zamani*, 488 F.3d at 1059.

The parties have identified the agreement for attorneys' fees; Clorox has agreed not to oppose a request for attorneys' fees and costs not to exceed $2.25 million.  The agreement as to the amount of

1   attorneys' fees could affect the class members.  The allocation of those fees amongst class counsel does

2   not affect the monetary benefit to class members.  Moreover, federal courts routinely affirm the

3   appropriateness of a single fee award to be allocated among counsel and have recognized that lead

4   counsel are better suited than a trial court to decide the relative contributions of each firm and attorney.

5   *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 781 (6th Cir. 1996); *Longden v. Sunderman*, 979 F.2d 1095, 1101

6   (5th Cir. 1992); *see also Atlas v. Accredited Home Lenders Holding Co.*, No. 07-cv-00488, 2009 WL

7   3698393 (S.D. Cal. Nov. 4, 2009) (allowing funds to be paid to lead counsel and allocated in manner

8   that in good faith reflects contributions of each counsel to prosecution and settlement of litigation).  The

9   parties negotiated the attorneys' fees and costs after negotiating the settlement fund in this matter.  (Doc.

10   No. 82 at p. 5.)  The Court finds the parties have acted in good faith and concludes that it is appropriate

11   to allow class counsel to allocate the fee award in good faith reflecting the contributions of each firm.

12   The Court retains jurisdiction under the stipulation for settlement to resolve any disputes that arise

13   regarding allocation.  (Doc. No. 77 at p. 18.)

14   **D.      Service Awards to Plaintiff Hartless and Plaintiff Wachowski**

15           Incentive awards are fairly typical in class actions.  *Rodriguez v. West Publishing Corp.*, 563

16   F.3d 948, 958-59 (9th Cir. 2009) (citation omitted).  They are intended to "compensate class

17   representatives for work done on behalf of the class, to make up for financial or reputational risk

18   undertaken in bringing the action and, sometimes, to recognize their willingness to act as a private

19   attorney general."  *Id.*; *Bell v. Farmers Ins. Exch.*, 115 Cal.App.4th 715, 726 (2004) (affirming award

20   of service payments).

21           In this case, Plaintiff Hartless requests a service award of $4,000 and Plaintiff Wachowski

22   requests a service award of $2,000.  Plaintiff Hartless has protected the interests of the class and has

23   spent the past four years meeting with counsel, supervising counsel's efforts on behalf of the class,

24   participating in discovery and efforts leading to settlement, and approving the amount and type of

25   settlement proposed for the class.  (Doc. No. 81-3 at p. 5.)  The class has benefitted from these actions

26   by receiving a settlement that represents up to 100 percent of the claimed property damage and

27   injunctive relief.  Likewise, Plaintiff Wachowski has spent the last year meeting with counsel,

28   supervising counsel's efforts on behalf of the class, participating in discovery and efforts leading to

1   settlement, and approving the amount and type of settlement proposed for the class.  (Doc. No. 91-3.)

2   Moreover, no class member has objected to these service awards.  Therefore, the Court finds these

3   request for service awards reasonable and **GRANTS** the requests.

4   **E.      Incentive Payment to Objector Newman**

5          Objector Newman requests an "incentive" award for her role in "improving the settlement."

6   (Doc. No. 98 at p. 19.)  She does not, however, provide any authority for this request.  Attorneys' fees

7   are sometimes available under a common fund or substantial benefit doctrine if the objection confers a

8   significant benefit to the class (where the ultimate class recovery exceeds the amount that would have

9   been achieved without the objector's effort).  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051-52 (9th

10  Cir. 2002); *Consumer Cause, Inc. v. Mrs. Gooch's Natural Foods Mkts., Inc.*, 127 Cal.App.4th 387,

11  397-98 (2005).  The benefit must be actual and concrete not conceptual or doctrinal.  *Robbins v.*

12  *Alibrandi*, 127 Cal.App.4th 438, 448 (2005).  In this case, objector Newman did not raise any issues

13  that resulted in a cognizable benefit to the class.  The objections raised by Newman as to the settlement

14  did not confer a benefit on the class or add anything to this decision.  Moreover, objector Newman

15  raises this issue in one sentence at the end of his objection and not as a properly brought request for

16  attorneys' fees.  Thus, the Court finds no grounds to grant an incentive award to objector Newman and

17  that request is **DENIED**.[7]

18                                **III.  CONCLUSION**

19          **IT IS HEREBY ADJUDGED AND DECREED THAT**:

20          1.      This Judgment incorporates by reference the definitions in the Stipulation of  Settlement

21  dated May 21, 2010 ("Stipulation") (Doc. No. 77) and all capitalized  terms used herein shall have the

22  same meanings as set forth in the Stipulation unless set forth differently herein. The terms of the

23  Stipulation are fully incorporated in this Judgment as if set forth fully here.

24          2.      The Court has jurisdiction over the subject matter of this action and all Parties to the

25  action, including all Class Members who do not timely exclude themselves from the Class. The list of

26  excluded Class Members was filed with the Court on January 20, 2011 and is attached as Exhibit A.

27

28          _____

        [7]  The Court also notes that the objection provided by Sonia Newman lacks the information
    required by this Court's preliminary approval order.  (*See* Doc. No. 80 at p. 13, ¶ 2.)

3.     Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Court hereby certifies the following Class:  All persons or entities in the United States who purchased, used or suffered any property damage from the use of Clorox Automatic Toilet Bowl Cleaner with Bleach ("CATBC") at any time from December 13, 2002 to September 15, 2010.  Specifically excluded from the Class are: (a) all federal court judges who have presided over this Action and their immediate family; (b) all persons who have submitted a valid request for exclusion from the Class; (c) Defendant's employees, officers, directors, agents, and representatives and their family members; and (d) those who purchased CATBC for the purpose of resale.

4.     Pursuant to Federal Rule of Civil Procedure 23(c)(3), all such persons or entities who satisfy the Class definition above, except those Class Members who timely and validly excluded themselves from the Class, are Class Members bound by this Judgment.

5.     For settlement purposes only, the Court finds:

(a)     Pursuant to Federal Rule of Civil Procedure 23(a), Shawndee Hartless, is a member of the Class, her claims are typical of the Class, and she fairly and adequately protected the interests of the Class throughout the proceedings in the Action.  Accordingly, the Court hereby appoints Shawndee Hartless as class representative;

(b)     The Class meets all requirements of Federal Rules of Civil Procedure 23(a) and (b)(3) for certification of the class claims alleged in the First Amended Complaint filed by Shawndee Hartless, including: (a) numerosity; (b) commonality; (c) typicality; (d) adequacy of the class representative and Class Counsel; (e) predominance of common questions of fact and law among the Class for purposes of settlement; and (f) superiority; and

(c)     Having considered the factors set forth in Rule 23(g)(1) of the Federal Rules of Civil Procedure, Class Counsel have fairly and adequately represented the Class for purposes of entering into and implementing the settlement, and thus, hereby appoints Class Counsel as counsel to represent Class Members.

6.     Persons or entities who filed timely exclusion requests are not bound by this Judgment or the terms of the Stipulation and may pursue their own individual remedies against Defendant.  However, such excluded parties are not entitled to any rights or benefits provided to Class

1   Members by the terms of the Stipulation. The list of persons and entities excluded from the Class

2   because they filed timely and valid requests for exclusion is attached hereto as Exhibit A.

3        7.      The Court directed that notice be given to Class members by publication and other

4   means pursuant to the notice program proposed by the Parties in the Stipulation and approved by the

5   Court. The Declaration of Garden City Group, Inc., attesting to the dissemination of the notice to the

6   Class, demonstrates compliance with this Court's Preliminary Approval Order.  The Class Notice

7   advised Class members of the terms of the settlement; the Final Approval Hearing and their right to

8   appear at such hearing; their rights to remain in or opt out of the Class and to object to the settlement;

9   the procedures for exercising such rights; and the binding effect of this Judgment, whether favorable or

10  unfavorable, to the Class.

11       8.      The distribution of the notice to the Class constituted the best notice practicable under

12  the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the

13  requirements of due process, 28 U.S.C. §1715, and any other applicable law.

14       9.      Pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court finds after a hearing and

15  based upon all submissions of the Parties and other persons that the settlement proposed by the Parties

16  is fair, reasonable, and adequate.  The terms and provisions of the Stipulation are the product of

17  arms-length negotiations conducted in good faith and with the assistance of an experienced mediator,

18  Honorable Gary Taylor (retired).  The Court has considered any timely objections to the Settlement and

19  finds that such objections are without merit and should be overruled.  Approval of the Stipulation will

20  result in substantial savings of time, money and effort to the Court and the Parties and will further the

21  interest of justice.

22       10.     Upon the Effective Date, the named Plaintiff and each Class Member shall be deemed to

23  have, and by operation of this Final Settlement Order and Judgment shall have released, waived and

24  discharged with prejudice Defendant from any and all claims, demands, rights, causes of action, suits,

25  petitions, complaints, damages of any kind, liabilities, debts, punitive or statutory damages, penalties,

26  losses and issues of any kind or nature whatsoever, asserted or unasserted, known or unknown

27  (including, but not limited to, any and all claims relating to or alleging deceptive or unfair business

28  practices, false or misleading advertising, intentional or negligent misrepresentation, negligence,

concealment, omission, unfair competition, promise without intent to perform, unsuitability, unjust

enrichment, and any and all claims or causes of action arising under or based upon any statute, act,

ordinance, or regulation governing or applying to business practices generally, including, but not

limited to, any and all claims relating to or alleging violations of Bus. & Prof. Code §§ 17200-17209

and § 17500, the CLRA (Civil Code §§ 1750-1784), or any and all other federal, state, and/or local

statutes analogous or similar to the California statutes cited herein), arising out of or related to the

Clorox Lawsuits, that were asserted or reasonably could have been asserted in the Clorox Lawsuits by

or on behalf of all Releasing Parties, whether individuals, class, representative, legal, equitable,

administrative, direct or indirect, or any other type or in any other capacity, against any Released Party.

11.   All Class Members who have not timely and validly submitted requests for exclusion are bound by this Judgment and by the terms of the Stipulation.

12.   The plaintiffs in the Clorox Lawsuits initiated their respective lawsuits, acted to protect the Class, and assisted their counsel.  Their efforts have produced the Stipulation entered into in good faith that provides a fair, reasonable, adequate and certain result for the Class.  Plaintiff Hartless is entitled to an incentive award of $4,000.  Plaintiff Wachowski is entitled to an incentive award of $2,000.  Class Counsel is entitled to reasonable attorneys' fees and expenses which the Court finds to be $2,250,000.

13.   The Court hereby dismisses with prejudice the Action, and the Released Parties are hereby released from all further liability for the Released Claims.

14.   Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration and enforcement of this Judgment and the Stipulation, and all matters ancillary thereto.

15.   The Court finding that no reason exists for delay in ordering final judgment pursuant  to Federal Rule of Civil Procedure 54(b), the clerk is hereby directed to enter this Judgment forthwith.

16.   The Parties are hereby authorized without needing further approval from the Court to agree to and adopt such modifications and expansions of the Stipulation, including without limitation

/ / /

/ / /

1    the claim review procedure, that are consistent with this Judgment and do not limit the rights of Class

2    Members under the Stipulation.

3          **IT IS SO ORDERED.**

4

5    DATED:  January 20, 2011

6    _____

7    **CATHY ANN BENCIVENGO**
     United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

06cv2705

# EXHIBIT A

## Hartless v. Clorox Company
## Exclusion Report
## December 29, 2010

| GCG No. | Name | Address 1 | Address 2 | City | State | Zip 5 | Zip 4 |
|---|---|---|---|---|---|---|---|
| 2000241 | M A ARMOUR | 9920 JOEGER RD | | AUBURN | CA | 95603 | 9006 |
| 2002936 | EDWARD G FULMER | 742 PONDELLA RD | APT 110 | N FT MYERS | FL | 33903 | 5767 |
| 2003619 | MARGARET HARING | 3333 5TH AVE | | PITTSBURGH | PA | 15213 | |
| 2003754 | ANNE HEEREN | 445 N WILMOT RD | APT 319 | TUSCON | AZ | 85711 | 2623 |
| 2004077 | PAUL HUGHES | 464 MINE GAP RD | | EAST FLAT ROCK | NC | 28726 | 2620 |
| 2004751 | KERRY KNAPP | PO BOX 200 | | EFFORT | PA | 18330 | 0200 |
| 2006968 | JOHN POWERS | 13303 HOPEFUL HILL RD | | NEVADA CITY | CA | 95959 | 9787 |
| 4079 | IMA JEAN STEPHENS | 910 PRIVATE ROAD 2069 | | WINTERS | TX | 79567 | 4256 |
| 2008404 | GLORIA STILES | 11476 FOREMAN ST | | LOWELL | MI | 49331 | 9647 |
| 2008789 | MARY TOWNSAGER | 915 DIVISION ST | | BARRINGTON | IL | 60010 | 5087 |