1                    UNITED STATES DISTRICT COURT

2                   SOUTHERN DISTRICT OF CALIFORNIA

3

4    HARTLESS,                      )   Case No. 06CV2705-CAB
                                    )
5            Plaintiff,             )   San Diego, California
                                    )
6    vs.                            )   Wednesday,
                                    )   December 29, 2010
7    CLOROX COMPANY,                )   1:30 p.m.
                                    )
8            Defendant.             )
     _____)
9

10                TRANSCRIPT OF MISCELLANEOUS HEARING
              BEFORE THE HONORABLE CATHY ANN BENCIVENGO
11                UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13   For the Plaintiff:           TIMOTHY G. BLOOD, ESQ.
                                  LESLIE E. HURST, ESQ.
14                                Blood, Hurst & O'Reardon, LLP
                                  600 B Street, Suite 1550
15                                San Diego, California 92101
                                  (619) 338-1100
16
                                  PATRICIA N. SYVERSON, ESQ.
17                                ELAINE RYAN, ESQ.
                                  BONNETT, FAIRBOURN, FRIEDMAN
18                                  & BALINT
                                  2901 North Central Avenue
19                                Suite 1000
                                  Phoenix, Arizona 85012
20                                (602) 788-5825

21   For the Defendant:           ADAM G. LEVINE, ESQ.
                                  SABRINA H. STRONG, ESQ.
22                                O'Melveny & Myers, LLP
                                  400 South Hope Street
23                                Los Angeles, California 90071
                                  (213) 430-6407
24

25   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

*Echo Reporting, Inc.*

ii

APPEARANCES:   (Cont'd.)

For the Objector:              JANINE MENHENNET, ESQ.
                              Law Offices of Darryl Palmer
                              603 North Highway 101, Suite A
                              Solana Beach, California 92075
                              (858) 792-5600

Transcript Ordered by:        PATRICIA N. SYVERSON, ESQ.

Transcriber:                  Jordan Keilty
                              Echo Reporting, Inc.
                              6336 Greenwich Drive, Suite B
                              San Diego, California 92122
                              (858) 453-7590

1

1   <u>SAN DIEGO, CALIFORNIA   WEDNESDAY DECEMBER 29, 2010 1:30 P.M.</u>

2                          --oOo--

3        (Call to order of the Court.)

4             THE CLERK:  Your Honor, we're back on the record

5   this afternoon on matter number eight of the calendar, Case

6   Number 06-CV-2705-CAB, Hartless versus Clorox Company.  This

7   is on calendar for a fairness hearing.

8             Counsel, if I could have you please state your

9   presence for the record, beginning with Plaintiff's counsel.

10            MR. BLOOD:  Timothy Blood for the Plaintiffs.

11            MS. HURST:  Leslie Hurst for Plaintiff.

12            MS. RYAN:  Elaine Ryan for Plaintiff.

13            MS. SYVERSON:  Patricia Syverson for Plaintiffs.

14            THE COURT:  Thank you.

15            MS. STRONG:  Sabrina Strong of O'Melveny and Myers

16  for Defendant Clorox, and I'm here with Adam Levine and

17  Katherine Edsall.

18            THE COURT:  Thank you very much.

19            MS. MENHENNET:  Janine Menhennet, your Honor, for

20  Objector Peterman (phonetic).

21            THE COURT:  Thank you.

22            All right.  I have read all the submissions by the

23  parties and the objectors, and at this time I'd like to

24  allow Plaintiff's counsel if you want to put anything

25  further on the record.

*Echo Reporting, Inc.*

2

1          MR. BLOOD:  Your Honor, I don't think we have
2     anything further.  We've looked back through the papers.  I
3     think we've covered everything.  I think we've -- we've
4     answered all of the points raised by the objectors.  I guess
5     one thing I would point out is -- there's two issues I think
6     I'd point out.  One on the issue of predominance, I think
7     they have the predominance issue a little confused.  The
8     issue of predominance is not a choice of law issue in the
9     settlement context.  The issue of predominance here, the
10    reason why this would be a class action is because the
11    predominating question is the truth or falsity of the
12    labeling, whether or not the product harms plumbing.  That's
13    the predominant issue that would apply to every single class
14    member, regardless of what state they live in or what
15    remedies a particular state's consumer fraud provision would
16    provide.
17          Secondly, the reason why it's not a -- choice of
18    law can be an issue on predominance in class actions in the
19    litigation context.  However, the U.S. Supreme Court was
20    quite clear in AmCam that in the settlement context where
21    you don't have -- you're not presented, because of the fact
22    of settlement, with trying a case to a group of jurors and
23    trying to manage that trial, either applying the laws of all
24    50 states or a subset or just one state's law, because that
25    issue isn't present, then the variations in state laws

3

1  simply don't -- don't matter.  They don't -- they're not a

2  barrier to certification and settlement context.

3          THE COURT:  It was the Court's impression that in

4  terms of commonality on legal issues, while there might be

5  differences amongst the various states in a consumer fraud

6  action, if the reliance is required or not given the context

7  of the settlement and the conditions of the settlement,

8  since reliance doesn't need to be proven, in those states

9  where consumers would have to prove reliance, they're

10 actually getting a benefit in the settlement because that

11 step has been taken out and there's no harm to them, and

12 there's certainly no imposition put on consumers who don't

13 have to prove reliance.  So I don't see the difficulty there

14 for a class that would be certified for purposes of

15 settlement.

16          Equally, I think there were concerns and one of

17 the reasons why settlement is appropriate from the

18 Plaintiff's perspective on the factual matters if you got to

19 damages, the conditions that would be causally related to

20 the use of the product for damage, that is beyond simply the

21 purchase of the product.  There could be a lot of variables.

22 But given the tiered nature of the settlement, I think that

23 addresses those issues as well and no one is adversely

24 affected as --

25          MR. BLOOD:  And on that last point, I -- I think

4

1  there's a very good chance that had we gone through

2  certification in the litigation context and gone through

3  trial, we probably would not have sought individual property

4  damage claims for that very reason.  That could end up

5  defeating certification, but here you have a remedy that is

6  far better than what -- than the remedy that would be

7  afforded many class members had we actually litigated the

8  case.

9           THE COURT:  Right.

10          MR. BLOOD:  So that makes for a very good

11 settlement.

12          THE COURT:  And it would also seem for the vast

13 majority of class members their damage would be so di

14 minimis, the purchase price of a product, that to bring a

15 lawsuit would be -- they wouldn't even be able to establish

16 or remember when they bought it and how much they paid for

17 it.

18          The other issue, though, that they raised and you

19 might want to just respond to -- well, actually, it was my

20 impression, and I'll certainly allow counsel for the

21 objector to address this, was that given their analysis of

22 the issue, you could never have a nationwide class action on

23 a consumer product based on a mislabeling or

24 misrepresentation because there would be inconsistencies of

25 law amongst the 50 states.  And you certainly cited cases

5

1 that establish that settlements and nationwide class actions

2 happen.  So is -- am I missing something?

3           MR. BLOOD:  No.  And that -- I mean, both in the

4 litigation context and certainly in the settlement context,

5 nationwide consumer fraud class actions are brought and

6 brought successfully and go through trial.  That's

7 absolutely the case.  I mean, the briefs are somewhat can

8 from the objector.  So I think they sort of -- there's a

9 failure to analyze the actual facts of the case that's here

10 and presented before you.

11           THE COURT:  Okay.  And then one of the objectors

12 who's not represented today raised the issue as to whether

13 or not the settlement settles claims for people who may have

14 used the product but didn't -- don't have any damage claim

15 as a result of the use but didn't buy the product.  So I

16 bought the product for a family member because I went

17 shopping.  I gave it to them.  They didn't reimburse me for

18 the cost of the product.  They then used it.  They had no

19 damage -- or any damage that they recognize as a result of

20 the use, but this would extinguish their claim, but your

21 point was if there's no damage, there's no claim anyway.

22           MR. BLOOD:  Right.  And, usually, in the class

23 action context it's usually the -- sort of the flip side

24 that could potentially be a problem and why courts should

25 look closely at releases.  That situation being the release

6

1  releases people's claims, but they don't get any settlement

2  consideration for valid claims, but here the argument is the

3  release is releasing somebody's claim that they don't have,

4  and so if they don't have a claim, if they don't have any

5  damage, if they don't have anything, then there's no claim.

6  And the reason why that's in there, that definition, is

7  because we wanted to make sure that anybody that could

8  potentially have any sort of claim whatsoever who touched

9  this product could take advantage of the settlement.  And so

10  the more restrictive the language, the more likely that

11  someone says, "Well, gee, I don't know if I fall into that

12  category.  I'm not going to take advantage of the

13  settlement."  Also, the settlement has injunctive relief --

14  an injunctive relief component.  So just like in a (b)(2)

15  complex, you would have a class member who is bound by a

16  settlement release even if they never submitted -- even if

17  they never had a claim for damages.  They would still be

18  captured by the injunctive relief aspect of it and -- and,

19  you know, providing notice to the class whether they're a

20  user or purchaser or have been directly damaged by it is

21  good because it notifies people of this alleged problem, and

22  then they can -- if they haven't had damage yet, they can

23  stop using the product and they won't have damage, and

24  that's obviously a good thing.

25              THE COURT:  Okay.  All right.

7

1          MR. BLOOD:  Nothing else unless the Court has any

2  questions.

3          THE COURT:  All right.  Thank you.

4          Is there anything from the Defendant?

5          MS. STRONG:  No, nothing to add, your Honor.

6          THE COURT:  All right.  Then the Court would

7  invite Ms. Menhennet?

8          MS. MENHENNET:  Yes, your Honor.

9          THE COURT:  If you'd like to raise any issues

10 raised by the objector for the Court.

11         MS. MENHENNET:  Yes.  I'd just like to state that,

12 yes, you can still have nationwide class action consumer

13 fraud settlements as the judge said in <u>Grand Theft Auto</u>.

14 You just have to take the extra step of looking, okay, this

15 group of states permits this.  Have we satisfied that.

16 Okay.  That's this chunk.  You have to have subclasses.  So,

17 yes, consumer fraud nationwide class actions are still

18 possible and settleable and doable, and that's -- all we

19 need the Court to consider is is predominance really there.

20         As far as our objections to attorneys' fees, you

21 know, Mercury highlighted this.  The Court and the class

22 needs to make sure that the fees are fair.  As I added it up

23 -- and it was not canned -- it looked to me like they're

24 asking for a 36 percent take.  Once you take the $7,000,000

25 minus the administration fees, there's $6.2 million for the

8

1 class.  They want two and a quarter million.  That's 36
2 percent.  That's very high, especially in this District --
3 in this Circuit.

4          So I invite the Court to invite counsel to submit
5 their records, to a loadstar check, make sure that the fees
6 are fair and -- and reasonable.

7          THE COURT:  Counsel for the Plaintiff in reply to
8 your analysis of the percentage indicated that the value of
9 the settlement to the class is the cumulative value of
10 everything, not just the amount of money being paid out to
11 the class, but the administrative costs and their fees, all
12 taken together as a lump sum, and then you determine what in
13 that lump sum is the percentage that's attributable to fees.
14 You just disagree with that as the basis of the calculation?

15          MS. MENHENNET:  We noticed that there's plenty of
16 case law which says you shouldn't try to be recovering for
17 legal research.  We all know the --

18          THE COURT:  You didn't answer my question.

19          MS. MENHENNET:  Okay.

20          THE COURT:  My question was do you disagree with
21 their formula for calculating the percentage because your
22 percentage is saying the fees should be taken against just
23 the --

24          MS. MENHENNET:  The common benefit.

25          THE COURT:  -- the fund --

9

1            MS. MENHENNET:  Yes.

2            THE COURT:  -- as opposed to the total value of

3 the settlement, which would include the fees.

4            MS. MENHENNET:  Yes.

5            THE COURT:  And your case authority for that is?

6            MS. MENHENNET:  It's in our brief, your Honor.

7            THE COURT:  Okay.  You can't give me a specific

8 case right now?

9            MS. MENHENNET:  No.

10            THE COURT:  All right.  And I'll look at what you

11 cited.

12            MS. MENHENNET:  Okay.

13            THE COURT:  All right.  Thank you.  Is there

14 anything else you'd like to address?

15            MS. MENHENNET:  No, your Honor.

16            THE COURT:  All right.  Then anything further from

17 the Defendant?

18            MS. STRONG:  No.  I think -- your Honor, the only

19 thing I would say is I think you are focused on precisely

20 the correct issue, which is the concern for the absentee

21 class members, are they giving up rights that they would

22 otherwise have, and you noted it well, which is they are

23 actually getting benefits here pursuant to the settlement

24 that they would not otherwise get if it weren't for this

25 class settlement.

10

1          THE COURT:  All right.  And I do have to say my

2    overall impression is that this is an extremely well

3    negotiated settlement.  Congratulate the mediator who helped

4    you reach this result.  It's one of the class settlements

5    that seems to really give relief to the members of the class

6    and reflects, I think, the various levels of harm that might

7    have been caused by the product.

8          The Court is going to confirm the certification of

9    the settlement class based on the submitted definition of

10   the class, and I can -- it will be in the order.  I'm not

11   going to try and find it right now to read it into the

12   record, and grant -- well, I will take under submission for

13   further consideration the objector's comments and also the

14   fee application.  It is the Court's tentative at this time

15   that both the settlement will be approved and the fees will

16   be awarded and the expenses, but you'll get a written order

17   with the full analysis.

18         All right.  If there's nothing further, we're

19   done.  Thank you.

20         ALL:  Thank you, your Honor.

21      (Proceedings concluded.)

22

23

24

25

11

1          I certify that the foregoing is a correct

2 transcript from the electronic sound recording of the

3 proceedings in the above-entitled matter.

4

5 /s/Jordan Keilty                    1/26/11
  Transcriber                         Date
6
  FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:
7

8 /s/L.L. Francisco
  L.L. Francisco, President
9 Echo Reporting, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*